

# NUMBER 13-09-00523-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOSE GUADALUPE LOPEZ,                                                   Appellant,

v.

THE STATE OF TEXAS,                                                   Appellee.

### On appeal from the 357th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez, and Benavides
### Memorandum Opinion by Justice Benavides

Appellant, Jose Guadalupe Lopez,[1] appeals his conviction for aggravated sexual

assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (West Supp. 2010).

He was sentenced to twelve years' confinement in the Institutional Division of the Texas

---

[1] We note that the trial court's judgment refers to appellant as Jose Guadalupe Flores. However, we assume this is a clerical error as every other reference to appellant in the record names him as Jose Guadalupe Lopez. Accordingly, we refer to appellant as "Lopez" in this opinion.

Department of Criminal Justice.   By thirteen issues,[2] Lopez contends that he is entitled to an acquittal or to a new trial.   We affirm.

## I.   BACKGROUND

M.B., the alleged victim, started crying hysterically when the pledge of allegiance

---

[2] Lopez advances the following issues in his brief:

1.   The evidence did not disprove the exception "not the spouse of the defendant". (sic) A rational jury could not have found that the exception was disproven because there was no evidence on that element of the proof.

2.   The trial court erred in excluding evidence beneficial to the defense . . . the video showing that the defendant had been beaten up by the police shortly before he gave a statement admitted into evidence against him.

3.   The trial judge erred in excluding evidence that the defendant was acquitted of assaulting the police who beat him.

4.   The trial court erred in not making findings of fact and conclusions of law about the voluntariness of the defendant's statement to the police while in their custody.

5.   The trial court erred in denying defendant's proposed instruction number two regarding the police beating of the defendant and how that affects whether the statement was involuntary.

6.   The trial court erred in overruling the defendant's proposed instruction number three regarding prolonged questioning without food, insulin, etc.

7.   The trial court erred in not instructing the jury on the lesser-included offense of assault.

8.   The trial court erred in overruling the defendant's objection that an additional bailiff was standing behind the defendant while the complaining witness testified.

9.   The trial court erred in allowing the state to amend the indictment on the day the trial started.

10.   The trial court committed fundamental error by giving only an abstract instruction on extraneous offenses, rather than one which applied the law to the facts.

11.   The trial court erred in overruling the defendant's timely and specific objection to the prosecutor's leading the witness on a material point in the indictment . . . what part of the witness' body the defendant penetrated.

12.   The trial court erred in excluding evidence beneficial to the defense:   that the case against the co-defendant, the complaining witness' mother, had been dismissed.

13.   The trial court abused its discretion in admitting the defendant's statement to the police.

was recited in her seventh-grade, special-education classroom. Patricia Rodriguez, a paraprofessional with the school, took M.B. to see a school counselor. M.B. told the counselor that her mother was forcing her to have sex with a man named "Joe" in return for money to buy a car. M.B. said that Joe would perform acts upon her—including oral sex and penetrating M.B.'s vagina with his fingers—in exchange for fifty dollars. M.B. said that when she ran from Joe, she was slapped and told by her mother that it was okay for him to conduct such acts. At the time of the alleged acts, M.B. was twelve and thirteen years old.

On May 8, 2006, Lopez was arrested on the charge of aggravated sexual assault of a child and taken to the City of Brownsville Jail. Lopez became upset and unruly when a hold was placed on the telephone in his cell which prohibited him from making phone calls. Lopez was then forcibly moved to another cell without a phone. Lopez and a jailer received minor injuries due to this forcible removal. After receiving *Miranda* warnings, Lopez agreed to make a written statement admitting to abusing M.B. While speaking with the officers who took his statement, Lopez never advised them that he sustained injuries while being removed from his cell.

## II. DISCUSSION

### A. Sufficiency of the Evidence

By his first issue, Lopez contends that the evidence was insufficient for a rational jury to convict him of aggravated sexual assault. Specifically, he contends that there was no evidence presented as to the required element of the offense that the victim was not his spouse.

Our sufficiency review must be under "a rigorous and proper application" of the

3

*Jackson v. Virginia* standard of review. *See Brooks v. State*, 323 S.W.3d 893, 906 (Tex. Crim. App. 2010) (plurality op.). Under this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 323 S.W.3d at 902 n.19. "[T]he fact-finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) ("The jury, in all cases, is the exclusive judge of facts proved, and the weight to be given to the testimony . . . ."); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.").

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Under a hypothetically correct jury charge, the State was required to prove beyond a reasonable doubt that Lopez (1) intentionally or knowingly (2) caused the penetration of the sexual organ of a child by any means, (3) the child was younger than 14 years of age, and (4) the child was not his spouse. TEX. PENAL CODE ANN. § 22.021(a)(1)(B); *id.* § 22.011(c)(1) (West Supp. 2010).

Lopez challenges the sufficiency of the evidence as to the last element requiring the State to prove that the child was not his spouse. *See* TEX. PENAL CODE ANN. § 22.011(c)(1). We note in regard to this issue that circumstantial evidence can be

4

sufficient to prove that a child was not the spouse of the actor. *Martin v. State*, 819 S.W.2d 552, 556 (Tex. App.—San Antonio 1991, no pet.) (citing *Wilson v. State,* 654 S.W.2d 465, 467 (Tex. Crim. App. 1983)). Additionally, age alone can be sufficient to prove that the child was not the spouse of the actor, and the fact that the actor is married to someone other than the victim is sufficient to prove the victim was not his spouse. *Ferguson v. State*, 579 S.W.2d 2, 7 (Tex. Crim. App. 1979); *Chavez v. State*, 508 S.W.2d 384, 386 (Tex. Crim. App. 1974); *see Henson v. State*, 173 S.W.3d 92, 101 (Tex. App.—Tyler 2005, pet. ref'd).

Here, M.B. was only twelve and thirteen years old when the incidents occurred. This circumstantial evidence alone is sufficient to establish the non-spousal element of the offense. *See Chavez*, 508 S.W.2d at 386 (holding that the evidence was sufficient to show that the victim was not the spouse of the actor because she was only nine years old). Additionally, the testimony indicated that as of 2009, Lopez had been married to his wife for thirty-eight years. The sexual assault occurred in 2006, and therefore, because he was married to a woman other than M.B. at the time of the incident, M.B. could not have been his spouse. *See Ferguson*, 579 S.W.2d at 7 (holding that sufficient evidence existed to prove the victim was not the spouse of the actor when evidence indicated that the actor was married to another woman). When the evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could have found that the victim was not the spouse of Lopez. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 902 n.19. We overrule Lopez's first issue.

## B.  Evidentiary Rulings

By his second, third, eleventh and twelfth issues, Lopez contends that the trial

court made improper evidentiary rulings that prejudiced his ability to present his case.

### 1. Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). A trial court does not abuse its discretion if its decision is within the zone of reasonable disagreement. *See Walters v State*, 247 S.W.2d 204, 217 (Tex. Crim. App. 2007). We will sustain the trial court's decision if that decision is correct on any theory of law applicable to the case. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

Rule 401 of the Texas Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. However, rule 403 states that even relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *Id*. at R. 403; *see Shuffield*, 189 S.W.3d at 793.

Generally, extraneous transactions or prior specific acts of misconduct committed by a party are inadmissible because they are irrelevant to the case at hand. *Murphy v. State*, 587 S.W.2d 718, 721 (Tex. Crim. App. 1979) (citing *Finley v. State*, 573 S.W.2d 238 (Tex. Crim. App. 1978)). The rationale behind this rule is that an accused is entitled to be tried on the charges made in the State's pleading and not for some collateral crime or for being a criminal generally. *Grayson v. State*, 481 S.W.2d 859, 861 (Tex. Crim. App. 1972). Admitting extraneous offenses are inherently prejudicial because such

6

admittance: (1) most likely requires the defendant to face a charge of which he had no notice; and (2) incorrectly allows the issue of the defendant's "propensity to commit crimes" to be considered when assessing the defendant's guilt of the specific charge at hand. *Id.* (citing *Clements v. State*, 182 S.W.2d 915, 917 (Tex. Crim. App. 1944)). Evidence of extraneous offenses may only become admissible if it is proven that the transaction is: (1) relevant to a material issue of the case at hand; and (2) the relevancy outweighs the inflammatory or prejudicial potential. *Ruiz v. State*, 579 S.W.2d 206, 209–10 (Tex. Crim. App. 1979). Thus, where something is immaterial to an essential element of the case, if the prejudicial effect of such evidence far outweighs its probative value, then it is not admissible. *Id.*

### 2. Videotape

By his second issue, Lopez contends that the trial court erred when it refused to admit the video showing the struggle that occurred when the police removed him from his jail cell. Lopez alleges that the video shows he was beaten up by the police shortly before he gave his statement. Lopez asserts that this videotape provides evidence that his statement was not voluntary. However, the record reflects that Lopez had the opportunity to cross-examine one of his alleged assailants, Officer Jesus Arias, during trial. He also had the opportunity to cross-examine a jail matron, Alma Hernandez, who witnessed the alleged ordeal. Hernandez testified that she saw Officer Arias with another officer on top of Lopez, attempting to restrain him in his cell.

The trial court had the discretion to exclude the videotape if its contents were cumulative of Arias's and Hernandez's testimony. *Shuffield*, 189 S.W.3d at 793; *see* Tex. R. Evid. 403. Further, the trial court ruled that it did not see the relevance of the

videotape in the context of Lopez's aggravated sexual assault charge against M.B. *See* TEX. R. EVID. 403. Because we conclude the trial court did not act arbitrarily or unreasonably in choosing to exclude the videotape, we overrule Lopez's second issue.

### 3. Acquittal

Lopez's third issue argues that the trial judge erred in excluding evidence that Lopez was acquitted of assaulting the police officers who allegedly beat him. He contends that this evidence also affects the voluntariness of his statement. Again, we note that the trial court indicated on the record that it did not find this charge relevant to charge that Lopez may have sexually assaulted M.B:

| [Lopez's Counsel]: | . . . . The defendant was found not guilty of assault in this case. |
|---|---|
| [The Court]: | So? |
| [Lopez's Counsel]: | So we should be able to ask about that. |
| [The State]: | That's a separate case. |
| [Lopez's Counsel]: | It's not a separate case. |
| [The Court]: | I don't see the relevance of that. |

The trial court has the discretion to exclude evidence that is irrelevant to the issues being tried. *Shuffield*, 189 S.W.3d at 793. Here, the court found that Lopez's acquittal in the assault charge on Brownsville police officers had no tendency to make the existence of any fact of consequence to the determination of the aggravated sexual assault charge more or less probable. TEX. R. EVID. 401. Because we conclude that this decision was not an abuse of discretion, we overrule Lopez's third issue.

### 4. Leading Questions

In his eleventh issue, Lopez contends the trial court erred in overruling his

objection to the prosecutor's leading question regarding which part of the victim's body he allegedly penetrated.   Lopez specifically complains about the following testimony:

Q. [The State]:        Where did [Lopez] touch you?

A. [M.B.]:             In the bottom.

Q. [The State]:        What did he touch you with?

A. [M.B.]:             His hands.

                       . . . .

Q. [The State]:        At that particular time, were you wearing underwear, or were you not wearing underwear?

A. [M.B.]:             I think I wasn't wearing underwear.

Q. [The State]:        Okay.   When you say he touched you with his hand down there, can you explain to the jury how he touched you?

A. [M.B.]:             He put his finger.

Q. [The State]:        Where?

A. [M.B.]:             Inside.

Q. [The State]:        Inside where?   You can tell the jury.   Take your time, [M.B.].

                       . . . .

A. [M.B.]:             I don't know what word to use.

Q. [The State]:        Okay. Is it the part underneath your underwear?

A. [M.B.]:             Yes.

Q. [The State]:        Okay.   Is it—to put it in very simple words, was it your female sexual organ?

A. [M.B.]:             Yes.

Q. [The State]:        Okay.   And again, I know this is difficult, but just

9

|  |  |
|---|---|
|  | to be clear, was it your vaginal area that he was touching? |
| A. [M.B.]: | Yes. |
| Q. [The State]: | Was that the part of your body that he was putting his finger inside of? |
| A. [Lopez's Counsel]: | I object to the leading. |
| Q. [The Court]: | Overruled. |

Texas Rule of Evidence 611(c) provides that "leading questions should not be used on the direct examination except as may be necessary to develop the testimony of the witness." TEX. R. EVID. 611(c). The trial court has discretion in deciding whether to permit leading questions. *See Hernandez v. State*, 643 S.W.2d 397, 400 (Tex. Crim. App. 1982). And the rule against leading questions is somewhat relaxed with child witnesses. *See Clark v. State*, 952 S.W.2d 882, 886 (Tex. App.—Beaumont 1997, no pet.) (citing *Moon v. State*, 856 S.W .2d 276, 279 (Tex. App.—Fort Worth 1993, pet. ref'd)). "The asking of leading questions will seldom be a ground for reversal especially where a child is testifying." *Uhl v. State*, 479 S.W.2d 55, 57 (Tex. Crim. App. 1972). In this case, M.B. was a minor alleging sexual abuse. There was also evidence that M.B. was in special education classes at her school, which may have been another factor the trial court considered when allowing leading questions to develop her testimony. *See In re J.A.W.*, 976 S.W.2d 260, 262 (Tex. App.—San Antonio 1998, no pet.) (holding that the trial court had the discretion to allow leading questions on the direct examination of a child in special education classes with a learning disability); *see also Trevino v. State,* 783 S.W.2d 731, 733 (Tex. App.—San Antonio 1989, no writ) (same). We find the trial court did not abuse its discretion in allowing the State to lead M.B., a minor with certain special

10

education needs, on particular aspects of her testimony.   We overrule issue eleven.

### 5. Dismissal of Case against Co-Defendant

Lopez's twelfth issue contended that the trial court erred when it failed to admit evidence that the State dismissed its case against the co-defendant, M.B.'s mother.   The record showed that M.B.'s mother had previously been indicted for aggravated sexual assault on a child and for compelling prostitution.   *See* TEX. PENAL CODE ANN. § 22.021(2)(A)(1); *id.* § 43.05(2) (West Supp. 2010).   The State, however, dismissed these charges in 2007.   The State argued that its dismissal of the case against M.B.'s mother was irrelevant to Lopez's trial.

There are numerous reasons why the State might dismiss a case against a potential defendant.   *See Metzger v. Houston Police Dep't*, 846 S.W.2d 383, 385 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (concluding that a witness was incompetent to testify); *Kendall v. State*, 997 S.W.2d 630, 631 (Tex. App.—Dallas 1998, pet. denied) (dismissing a case after the evidence was suppressed).   The trial court has wide discretion on the relevancy of evidence. *Shuffield*, 189 S.W.3d at 793; *see* TEX. R. EVID. 401, 403.   In this case, the State contended that their dismissal of M.B.'s mother's charges was irrelevant, and the trial court was persuaded by this argument.   Because we conclude that the trial court has wide discretion in determining the relevancy of evidence, we hold that the trial court did not act without any reference to guiding or principles, or act arbitrarily or unreasonably on this issue.   We overrule Lopez's twelfth issue.   *See Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990); *see also Shuffield*, 189 S.W.3d at 793.

## C. Jury Charge

By his fifth, sixth, seventh, and tenth issues, Lopez contends that the trial court erred by (1) failing to include instructions on the voluntariness of his statement in the jury charge, (2) failing to submit the lesser-included offense of assault to the jury, and (3) failing to apply law to facts regarding extraneous offenses in the charge.

### 1. Instruction on Alleged Police Beating

Lopez's fifth issue asserts that the trial court erred when it denied his proposed instruction regarding his alleged beating by the police. Lopez contends this instruction was necessary as the alleged beating affected the voluntariness of his statement wherein he admitted to the charges.

We find *Mendoza v. State* instructive on this issue. 88 S.W.3d 236, 239 (Tex. Crim. App. 2002). In *Mendoza*, the defendant Mendoza also challenged the voluntariness of his confession, which was admitted into evidence. *Id.* at 237. After the guilt-innocence phase of his jury trial, Mendoza proposed four jury charge instructions regarding the circumstances surrounding his confession: the first concerned the general law on voluntariness; the second instructed the jury to disregard his confession if they found beyond a reasonable doubt that he had not been properly Mirandized; the third encouraged jurors to disregard his confession if they found beyond a reasonable doubt that law enforcement induced the confession by saying it could be used "for" him; and the fourth instructed jurors to disregard the confession if they had reasonable doubt that Mendoza "had been threatened, coerced, or put under duress by an officer." *Id.* at 237–38; *see also Miranda v. Arizona*, 384 U.S. 436, 462 (1966).

In analyzing the issue, the Texas Court of Criminal Appeals noted that "the trial

court must instruct the jury to disregard illegally obtained evidence if the defendant raises a fact issue concerning the manner in which the evidence was obtained and requests the instruction." *Mendoza,* 88 S.W.3d at 239 (citing Thomas v. State, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986)); *see* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (providing that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the . . . United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.").

The first instruction regarding the general law on voluntariness was included in Mendoza's charge. *Mendoza,* 88 S.W.3d at 240. The court noted that Mendoza's second and third instructions, which dealt with *Miranda* and improper inducement, respectively, "recited specific facts and called attention to a specific piece of evidence," which could "constitute a comment on the weight of the evidence." *Id.* Accordingly, it held that those two instructions were properly withheld by the trial court. *Id.* Finally, the court of criminal appeals ruled that Mendoza's fourth proposed instruction regarding coercion dealt with the law of voluntariness generally, and that it was within the trial court's discretion whether to submit it to the jury. *Id.*

Here, Lopez specifically requested the following instruction be included in the jury charge:

> If you have reasonable doubt thereof that prior to the giving of the statement by the defendant he did, if did give one, any officer threatened to whip the defendant or beat the defendant, coerce the defendant or use improper influence on the defendant thereby induced to sign the statement [sic], that such statement may not be freely or voluntarily made.

We conclude, as the court did in *Mendoza*, that this proposed instruction recites specific facts and calls attention to a specific occurrence raised during trial, which would

13

constitute an improper comment on the weight of the evidence. We hold that because the trial court in this case included a general instruction on voluntariness, as the *Mendoza* court did, this adequately addressed Lopez's concerns regarding the circumstances surrounding his confession. We overrule Lopez's fifth issue.

### 2. Instruction on Questioning under Duress

Lopez's sixth issue is similar to his fifth: he asserts that the trial court erred when it denied his proposed instruction regarding an allegedly prolonged police interrogation without food or insulin. Lopez proposed the following instruction prior to jury deliberations:

> Prior to the giving of the alleged confession of the defendant, if any, the officers having him in charge questioned him persistently over a prolonged period of time without allowing him sufficient sleep, drink, or food, or without allowing him to contact his wife, an attorney or other relative, and without taking him before the magistrate without unnecessary delay, that those matters are also relevant to this case and that those instructions be delivered to the jury at the time the charge is read instead of instruction contained in paragraph number five.

As we deduced in our analysis of issue five, the inclusion of this instruction would constitute an improper comment on the evidence. *See id.* at 240. We hold that the trial court did not abuse its discretion when it denied this proposed charge. *See id.* We overrule issue number six.

### 3. Instruction on Lesser-Included Offense

In his seventh issue, Lopez argues the trial court erred when it failed to instruct the jury on the lesser-included offense of assault. *See* TEX. PENAL CODE ANN. § 22.01(a) (West Supp. 2010). Lopez was convicted of aggravated sexual assault instead. *See id.* § 22.021(a)(1)(B).

Article 37.09(1) of the Texas Code of Criminal Procedure provides that an offense

14

is a lesser-included offense "if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." *See* TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006). Lopez was convicted of aggravated sexual assault, which means the State proved that he intentionally or knowingly caused the penetration of M.B.'s anus or sexual organ by any means without her consent, *see id.* § 22.021(a)(1)(A)(i), and that he caused M.B.'s sexual organ to contact or penetrate his mouth, *see id.* § 22.021(a)(1)(B)(ii). To establish a bodily injury assault under Texas Penal Code section 22.01(a)(1), a person commits the offense of assault if they cause bodily injury to another. *Id.* § 22.01(a)(1). To establish an offensive touching assault, a person must cause physical contact with another when the person knows or should reasonably know that the other will consider the contact offensive or provocative. *See Id.* § 22.01(a)(3).

In *McKithan v. State*, the Texas Court of Criminal Appeals cited the lower appellate court's analysis in a case with similar facts:

> We must address appellant's contention that assault bodily injury and assault offensive touching were lesser-included offenses of aggravated sexual assault as charged in the indictment. Assault bodily injury requires proof that the defendant caused bodily injury to the complainant; assault offensive touching requires proof that the defendant knew or should have reasonably believed that the complainant would regard the contact as offensive or provocative. Neither of these elements are within the elements of aggravated sexual assault as charged in the indictment.

324 S.W.3d 582, 585 (Tex. Crim. App. 2010). We find this analysis persuasive. Here, the State would have to prove different facts to establish a bodily injury or offensive touching assault. *See* TEX. PEN. CODE ANN. § 22.01(a)(1), (3). Accordingly, the requested lesser-included offense was not appropriate, and we overrule issue seven.

15

**4. Abstract Instruction on Extraneous Offenses**

Lopez's tenth issue asserts that the trial court committed fundamental error by giving only an abstract instruction on extraneous offenses, rather than one which applied the law to the facts. The jury instruction at issue provided as follows: "You are instructed that you are not to consider extraneous act evidence unless you believe beyond a reasonable doubt that the defendant committed that act." Specifically, Lopez argues that the word "extraneous" was a legal term outside the realm of understanding of lay jurors.

"Our first duty in analyzing a jury-charge issue is to decide whether error exists. Then, if we find error, we analyze that error for harm." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). The degree of harm required to reverse the trial court's judgment depends on whether or not the appellant objected to the charge before it was given to the jury. *Id.* Under *Almanza*, if the defendant has properly objected to the charge, we need only find "some harm" to reverse the trial court's judgment. *Id.* at 743–44 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). If the defendant fails to object, however, or states that he has no objection to the charge, "we will not reverse for jury-charge error unless the record shows 'egregious harm' to the defendant." *Id.* In determining whether egregious harm exists, we examine the charge in its entirety, the state of the evidence, the argument of counsel, and any other relevant information in the record. *Id.*

Lopez has pointed to nothing in the record to indicate that jurors did not

understand the word "extraneous."[3]   As s uch, we are unpersuaded by Lopez's argument and we conclude that no error existed in the inclusion of this instruction to the jury charge.   We overrule issue ten.

## D.   Additional Security

By his eighth issue, Lopez contends that the trial court erred in denying his objection to an additional bailiff standing behind him while M.B. testified because this "impinged upon the defendant's presumption of innocence."   Lopez contends that this was equivalent to "shackling" the defendant which has been held to be in violation of defendant's Sixth Amendment right to a fair trial.   *See Marquez v. State*, 725 S.W.2d 217, 230 (Tex. Crim. App. 1987); *Clark v. State*, 717 S.W.2d 910, 918–19 (Tex. Crim. App. 1986).   This contention, however, is not supported by case law.   *See Holbrook v. Flynn*, 475 U.S. 560, 569 (1986) ("[W]hile shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that his is particularly dangerous or culpable."); *Marquez*, 725 S.W.2d at 230 (noting that the presence of guards is not "as inherently prejudicial as shackling").   Lopez fails to demonstrate any inherent or actual prejudice caused by the officers present at his trial, and we do not see any reason why the presence of bailiffs in the courtroom would necessarily burden his presumption of innocence.   Therefore, we conclude that there was no error in denying his objection.   Lopez's eighth issue is overruled.

## E.   Amendment of Indictment

By his ninth issue, Lopez contends that "[t]he trial court erred in allowing the State

---

[3] Lopez argues that the word "extraneous" is as infrequently used as the words "hilbert" and "llewelyn."   We find no merit in this argument.

17

to amend the indictment on the day the trial started." Article I, section 10 of the Texas Constitution guarantees an accused the right to be informed of the nature and cause of the accusation against him in a criminal prosecution. TEX. CONST. art. I, § 10. The information must come from the face of the indictment. *Voelkel v. State,* 501 S.W.2d 313, 315 (Tex. Crim. App. 1973). This fundamental right enables the defendant to know with reasonable certainty the charges against him so he may prepare his defense. *Wilson v. State,* 520 S.W.2d 377, 379 (Tex. Crim. App. 1975).

The Texas Code of Criminal Procedure states that "[a]ll amendments of an indictment or information shall be made with the leave of the court and under its direction." TEX. CODE CRIM. PROC. ANN. art. 28.11 (West 1979). An amendment may not be made where the changes to the indictment add additional information or a different offense, or if rights of the defendant are substantially prejudiced. *Id.* at art. 28.10. More specifically, article 28.10 states that the indictment may be amended *before* trial, with a defendant's reserved right to ten days time to respond to such amendments if they would indeed prejudice his rights to fair notice of the charges against him. *Id.* (emphasis added). An indictment may be amended *after* trial begins if the amendment is not objected to by the defendant. *Id.* (emphasis added).

To constitute an amendment, there must be an alteration of the charging instrument that affects its actual substance. *Ward v. State*, 829 S.W.2d 787, 793–94 (Tex. Crim. App. 1992); *Eastep v. State*, 941 S.W.2d 130, 132 (Tex. Crim. App. 1997). An alteration not affecting the substance is considered abandonment. *Eastep*, 941 S.W.2d at 133. Put another way, abandonment occurs where the non-legally essential language of the charging instrument is deleted. *White v. State*, 890 S.W.2d 69, 72

18

(Tex. Crim. App. 1994) (en banc). Abandonment is permissible at anytime and does not trigger the defendant's rights under article 28.10. *Eastep*, 941 S.W.2d at 135. Such a rule is common sense, as a mere deletion of unnecessary or irrelevant language from an indictment could not possibly affect the defendant's ability to have proper notice of the charges against him.

Here, the State merely abandoned the charges in the indictment that applied to M.B.'s mother:

| | |
|---|---|
| [Counsel for State]: | [T]he State would respectfully ask that the mother's name be redacted from the indictment, since her case has been dismissed. |
| . . . . | |
| [Counsel for Lopez]: | Your Honor, we are going to object to that. |
| THE COURT: | I think you just won't read that part of the indictment. So we will leave it the way it is. |

By deleting M.B.'s mother as a co-defendant in the indictment, Lopez was not prejudiced, nor was he prevented from having fair notice upon which to proceed at trial with a prepared defense. Additionally, the inclusion of M.B's mother as a co-defendant was no more than surplusage that the State was not required to prove in order to convict Lopez of the originally indicted offense. *See id.* Accordingly, the change in the indictment was an abandonment, not an amendment, and the requirements of articles 28.10 and 28.11 of the Texas Code of Criminal Procedure were not triggered. *See id.* Therefore, there was no error. Lopez's ninth issue is overruled.

## F. Motion to Suppress

By his fourth and thirteenth issues, Lopez argues that the trial court erred in denying his motion to suppress his written statement because it was involuntarily given

19

and erred in not issuing findings of fact and conclusions of law regarding the voluntariness of the statement. When reviewing a trial court's denial of a motion to suppress, we apply a modified abuse of discretion standard. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). A trial court abuses its discretion when it "applie[s] an erroneous legal standard, or when no reasonable view of the record could support [its] conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion." *Lanum v. State*, 952 S.W.2d 36, 39 (Tex. App.—San Antonio 1997, no writ) (citing *DuBose v. State,* 915 S.W.2d 493, 497–98 (Tex. Crim. App. 1996)). We grant almost total deference to the trial court's determination of historical facts and the application of law to the facts regarding credibility and demeanor of witnesses. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). To determine if the trial court abused its discretion in denying the motion to suppress, we generally consider only the evidence brought at the hearing on the motion to suppress. *Rachal v. State,* 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

Once the defendant claims his statement was involuntary, the burden shifts to the State to prove that a statement was, in fact, voluntary. *See Farr v. State,* 519 S.W.2d 876, 880 (Tex. Crim. App. 1975). If the record reflects "official, coercive conduct of such a nature" that any statement obtained thereby is "unlikely to have been the product of an essentially free and unconstrained choice by its maker," then the statement is involuntary. *Alvarado v. State,* 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). Specifically, we must consider, under the totality of the circumstances, whether the defendant's will was "overborne" by coercion. *Armstrong v. State,* 718 S.W.2d 686, 693 (Tex. Crim. App.

20

1985). Relevant circumstances include the length of detention without communication, denying defendant's request for a telephone or lawyer, and physical brutality. *Id.*

In his thirteenth issue, Lopez argues that his statement to police was involuntary because he was refused his right to counsel, water, and insulin, and because just prior to his confession, he was physically beaten while being removed from a jail cell. First, to invoke a right to counsel, an appellant must make a clear and unambiguous request for such counsel. *Davis v. United States*, 512 U.S. 452, 462 (1994). Lopez did not invoke the right to counsel through the demand of a telephone in his jail cell because such a request does not constitute a clear and unambiguous request. *See id.* (holding that appellant's remark of "Maybe I should talk to a lawyer" was not an invocation of right to counsel). Furthermore, Lopez was duly informed of his right to counsel through a clear admonishment when the officers read him *Miranda* warnings. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 § 2(b) (West 1979); *Manson v. State*, 116 S.W.3d 248, 263 (Tex. App.—Houston [14th Dist.] 2003) (holding admonishment through reading of *Miranda* warnings is enough to establish adequate waiver of right to an attorney). The record gives no indication that Lopez requested an attorney at any time prior to his statement to police. *See Manson,* 116 S.W.3d at 263 (holding that where there was no evidence that appellant was refused right to talk to father, there was no claim for the denial of such a right of access to a family member).

Lopez additionally claims that his statement was involuntary due to physical brutality and the denial of water and insulin. Although misconduct such as the denial of food, the denial of medicine, or the threat or execution of physical brutality is inherently coercive, the record does not demonstrate any of these coercive acts occurred. There is

21

no indication in the record that Lopez requested food or medicine, and there is no indication that a threat of violence coerced Lopez into making his statement. *See Stein v. New York*, 346 U.S. 156, 182 (1953); *Reck v. Pate*, 367 U.S. 433, 440 (1961) (refusing to consider evidence of physical brutality where the officers state they did not inflict injury upon appellant). In this case, we refuse to consider such disputed facts due to the deference we give to the trial court and its superior opportunity to observe the witnesses and weigh the fleeting intangibles which may indicate truth or falsehood. *See Thomas v. Arizona*, 356 U.S. 390, 402–03 (1958). Accordingly, we find no abuse of discretion, and Lopez's thirteenth issue is overruled.

In his fourth issue, Lopez contends that "The trial court erred in not making findings of fact and conclusions of law about the voluntariness of the defendant's statement to the police while in their custody." As the State points out, the trial court did make such findings in its order denying the motion to suppress on October 24, 2007. In his reply brief, Lopez argues that the findings were simply unreasonable. For the same reasons noted above, we cannot agree. Lopez's fourth issue is overruled.

## III. CONCLUSION

Having overruled all of Lopez's issues on appeal, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
26th day of January, 2012.