**John Wesley HENSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 12–03–00185–CR.

Court of Appeals of Texas, Tyler.

May 25, 2005.

Discretionary Review Refused Sept. 14, 2005.

We affirm in part and reverse and render in part.

## BACKGROUND

Appellant was charged by indictment with attempted indecency with a child and criminal solicitation of a minor. The indictment included two enhancement paragraphs for prior felony convictions. Appellant pleaded "not guilty" to the charges and "not true" to the enhancement paragraphs. The matter proceeded to a jury trial, and Appellant elected to have the jury assess his punishment.

The jury found Appellant guilty of both offenses charged. After hearing punishment evidence, the jury found that the enhancement paragraphs were true and sentenced Appellant to imprisonment for life as an habitual offender. Appellant filed a motion for new trial, which was denied. This appeal followed.

## VOIR DIRE

In his first issue, Appellant contends that the trial court erred by disallowing proper questions by Appellant's attorney. These questions, according to Appellant, not only went to issues relating to the exercise of challenges for cause (bias against Appellant), but also precluded him from intelligently exercising his peremptory challenges. The State contends that the trial court's ruling was proper or, in the alternative, that Appellant has not shown harm.

### Standard of Review

 The trial court has broad discretion over the jury selection process. *Woods v. State*, 152 S.W.3d 105, 108 (Tex.Crim.App. 2004). The primary reason for this is that voir dire could go on indefinitely without reasonable limits. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex.Crim.App.2002).

Douglas Scott Williams, Athens, for appellant.

Donna R. Bennett, Athens, Shawn McDonald, for state.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and DeVASTO, J.

## OPINION

SAM GRIFFITH, Justice.

Appellant John Wesley Henson appeals his convictions for attempted indecency with a child and criminal solicitation of a minor. In five issues, he argues that the trial court improperly limited voir dire and empaneled biased jurors, the evidence is both legally and factually insufficient to support his convictions, and he was twice punished for the same alleged criminal act.

■ The propriety of a particular question posed during voir dire is left to the discretion of the trial court and reviewed for an abuse of discretion. *Id.* A trial court abuses its discretion only when a proper question about a proper area of inquiry is prohibited. *Woods,* 152 S.W.3d at 108. A question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Id.* However, an otherwise proper question is impermissible if it attempts to commit the juror to a particular verdict based on the facts. *Id.*

### The Record

During voir dire, defense counsel addressed the burden of proof in a criminal case and asked the following question: "Now, who all here—let's start with this. Who all here thinks right now that Mr.— Mr. Henson is guilty? Who feels that right now? If I had to vote right now." In response to counsel's question, nineteen venire members out of seventy-three stated that if they had to vote at that time, they would err on the side of the State. As counsel attempted to proceed with her inquiry, the following exchange occurred:

[DEFENSE COUNSEL]: Okay. So if it's 51 percent in your mind—correct me if I'm wrong—but any of those that raised their hand, if it's 51 percent that you think that he's guilty, that's enough—that's enough to find guilty. Would anybody who raised their hand disagree with that?

[PROSECUTOR]: Judge, I'm going to object. I think that 51 percent can be beyond a reasonable doubt as far as the jury is concerned.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Is that what—I'm just asking the question. I'm not passing judgment on you. Anybody—if that is what you're saying, 51 percent. Is there anybody— phrased that way, is there anybody else that wants to join this group to say if it were 51 percent that you thought he was guilty that you would say guilty?

[PROSECUTOR]: Judge, I'm going to again object. I don't think that's a proper question. It's asking the jury to draw a judgment on the case. They don't know any facts, and I don't think that's strike for cause if they answer yes.

[DEFENSE COUNSEL]: Judge, I'm trying to find out in their minds how strong is that burden of beyond a reasonable doubt.

THE COURT: Well, I'm going to sustain the objection.

### Questions about Burden of Proof

■ In a criminal case, the parties are entitled to question the venire to determine how the jury would apply the State's burden of proof. *Woolridge v. State,* 827 S.W.2d 900, 906 (Tex.Crim.App. 1992). The State's burden of proof is an issue applicable to any criminal case because the factfinder must apply that standard when determining guilt. *Id.* at 904. Moreover, a prospective juror's understanding of reasonable doubt "becomes more crucial to the intelligent exercise of either the State's or the defendant's peremptory challenges because there is no definition to guide what could be a juror's skewed perception of the term." *Id.* Great latitude should be allowed a party interrogating a venire to enable his counsel to intelligently determine whether to exercise his right of a peremptory challenge, which is a right that should not be unnecessarily limited. *Id.* at 905 (citing *McGowen v. State,* 163 Tex.Crim. 587, 290 S.W.2d 521, 524 (Tex.Crim.App.1956)).

Here, after nineteen venire members stated that they would find Appellant

guilty if asked to vote before hearing any evidence, defense counsel attempted to inquire further about how the jury would apply the State's burden of proof. Questions about the State's burden of proof are proper; therefore, defense counsel's questions were proper. *See id.* at 904. Although the prosecutor's voir dire examination covered the burden of proof, defense counsel had not asked any questions on that subject. Moreover, the prosecutor did not object to the form of defense counsel's question.[1] Consequently, we hold that the trial court abused its discretion when it prohibited defense counsel's further inquiry about the State's burden of proof. *See Woolridge,* 827 S.W.2d at 904 (abuse of discretion where inquiry about burden of proof was proper, not repetitious, and not in an improper form).

### Harm Analysis

 Because we have determined that the trial court abused its discretion by prohibiting proper questioning during voir dire, we must conduct a harm analysis to determine whether the error warrants reversal of the conviction. *Gonzales v. State,* 994 S.W.2d 170, 171–72 (Tex.Crim.App. 1999); *see also* Tex.R.App. P. 44.2. Defense counsel's question was directed to identified members of the venire—those who said they would err on the side of the State—and we therefore apply the harm analysis that is traditionally applied to the erroneous denial of a defendant's challenge

for cause. *See Janecka v. State,* 937 S.W.2d 456, 470–71 & 471 n. 9 (Tex.Crim. App.1996). For the erroneous denial of a challenge for cause, a defendant is harmed only if (1) he exhausts all of his peremptory challenges, (2) he requests more challenges, (3) his request is denied, and (4) he identifies an objectionable person seated on the jury on whom he would have exercised a peremptory challenge. *Narvaiz v. State,* 840 S.W.2d 415, 427 (Tex.Crim.App. 1992).

Here, it is uncontroverted that Appellant used all of his peremptory challenges. However, the record does not reflect that Appellant requested additional peremptory challenges. Moreover, although Appellant identifies three objectionable jurors in his brief, he did not do so in the trial court. Therefore, Appellant has failed to show harm from the trial court's error. Accordingly, Appellant's first issue is overruled.[2]

### JUROR BIAS

 In his second issue, Appellant urges that the trial court erred by allowing jurors Middleton, Yates, and Tidmore to be empaneled in the case after it was determined they had a bias in favor of the State and against Appellant.

### Discussion

 "Bias" has been defined as "an inclination toward one side of an issue

---

1. The prosecutor objected that (1) "51 percent can be beyond a reasonable doubt as far as the jury is concerned," (2) the question was not proper, (3) the question asked the jury to draw a judgment on the case, and (4) because the jury did not know any facts, "I don't think that's a strike for cause if they answer yes."

2. The State argues that by Appellant's failure to make the required showing, he has failed to preserve his error. The court of criminal appeals has noted that this analysis has sometimes been characterized as a preservation-of-

error analysis, but now refers to it as a harm analysis. *See Anson v. State,* 959 S.W.2d 203, 204 & n. 2 (Tex.Crim.App.1997) (citing *Green v. State,* 934 S.W.2d 92, 105 (Tex.Crim.App. 1996)). To preserve error under the circumstances presented in the case at bar, the record must reflect a proper question that the trial court did not allow to be answered, and the questioning party must obtain a ruling on the question. *Caldwell v. State,* 818 S.W.2d 790, 794 (Tex.Crim.App.1991). Appellant met these requirements.

rather than to the other ... [which] leads to the natural inference that [a juror] will not or did not act with impartiality." *Anderson v. State*, 633 S.W.2d 851, 853 (Tex.Crim.App. [Panel Op.] 1982) (citing *Compton v. Henrie*, 364 S.W.2d 179 (Tex. 1963)). "Bias" has also been characterized as an inclination toward one party. 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 35.71 (2001). Bias, by itself, is not sufficient for a challenge for cause. *See Anderson*, 633 S.W.2d at 853. Instead, an appellant must show that the juror was biased to the extent that he or she was incapable of being fair. *See id.* Ordinarily, counsel bears the burden of asking those questions during voir dire that are calculated to bring out that information which might indicate a juror's inability to be impartial. *Armstrong v. State*, 897 S.W.2d 361, 364 (Tex.Crim.App.1995).

Here, defense counsel introduced the subject of the State's burden of proof and then asked, "And if we took a vote right now, what would you say?" In response, nineteen venire members, including Middleton, Yates, and Tidmore, responded that they would err on the side of the State. Appellant maintains that by this answer, the three jurors exhibited a bias against him. Appellant acknowledges that defense counsel did not object to these jurors being empaneled.

■■■ As a general rule, the failure to timely object at trial waives error on appeal. *Boyd v. State*, 811 S.W.2d 105, 113 (Tex.Crim.App.1991). Even constitutional error can be waived by failing to object. *Wright v. State*, 28 S.W.3d 526, 536 (Tex.Crim.App.2000). An exception applies where the error is so egregious and created such harm that the defendant

has not had a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). In that instance, reversible fundamental error occurs and can be raised for the first time on appeal. *See id.* Appellant maintains that this exception applies here, arguing that "the record so conclusively establishes that Appellant did not receive a fair trial from a fair and impartial jury that his constitutionally guaranteed rights were violated." [3]

■■■ We first note that although Appellant asserts generally that the record "conclusively establishes" a constitutional violation, he does not develop his argument nor does he provide record cites or any authority to support his conclusion. *See* Tex. R.App. P. 38.1(h). He also does not cite any authority, nor or we aware of any, supporting his statement that an answer such as the one complained of here establishes, as a matter of law, that a venire member is biased against the accused. *Cf. Bryant v. State*, No. 14–99–01373–CR, 2002 WL 27573, at *2 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (not designated for publication) (venire member's statement that he had "a tendency to lean toward police officers before he heard one word" not bias as a matter of law); *Muniz v. State*, 851 S.W.2d 238, 258 (Tex.Crim. App.1993) (venire member's statement that he would have to be fifty-one percent certain or more before he could return affirmative answers to punishment issues was internal conception of what "beyond a reasonable doubt" would mean and not a showing of bias against appellant). Consequently, Appellant has waived this issue. *See Wood v. State*, 18 S.W.3d 642, 650 (Tex.Crim.App.2000) (concluding appellant waived facial validity challenge to penal

---

3. Appellant contends that because the record shows bias as a matter of law, the trial court should have disqualified Middleton, Yates, and Tidmore without a request from defense counsel.

code provision by failing to support argument with authority and failing to adequately develop his argument); *see also* Tex.R.App. P. 38.1(h). Even absent waiver, however, Appellant's argument still fails.

■■■ We first note that defense counsel's question pertained only to how the venire would vote *before* hearing evidence and does not address whether any member would be unable, *after* hearing the evidence, to apply the presumption of innocence or the State's burden of proof. Nonetheless, Appellant contends that a tendency to err on the side of the State reflects bias. However, in our view, it could also reflect that the venire members perceived no relationship between defense counsel's question and their duties once they heard the evidence. Therefore, even if the answer showed bias (an inclination toward one side or the other), it does not "lead[ ] to the natural inference that [Middleton, Yates, and Tidmore] . . . did not act with impartiality." *See Anderson*, 633 S.W.2d at 853.

The record reveals that the prosecutor informed the venire about the State's burden of proof and the presumption of innocence. He then asked, "Is everybody comfortable with that? Is everybody comfortable with presuming him to be innocent and holding me to the *correct* standard? Everybody okay with that?" No venire member responded in the negative. At trial, the State presented direct, uncontroverted evidence of Appellant's guilt. Finally, the jury charge included the following paragraphs:

> The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant. The prosecution has the burden of proving the defendant guilty, and it must do so by proving each and every element of the offense charged beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant.
>
> . . . .
>
> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that the defendant has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial.

These portions of the charge properly instructed the jury on the State's burden of proof and the presumption of innocence. We must presume that the jury, including Middleton, Yates, and Tidmore, followed these instructions. *See Resendiz v. State*, 112 S.W.3d 541, 546 (Tex.Crim.App.2003). Nothing in the record indicates they did not. Appellant's second issue is overruled.

### SUFFICIENCY OF THE EVIDENCE

In his third issue, Appellant contends the evidence is legally insufficient to support his convictions. In his fourth issue, he contends the evidence is factually insufficient.

### Standard of Review

In reviewing a challenge to the legal sufficiency of the evidence, we review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Young v. State*, 14 S.W.3d 748, 753 (Tex.Crim.App.2000). In reviewing the evidence for legal sufficiency, an appellate court does not reweigh the evidence or substitute its judgment for that of the jury. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). The jury is the exclusive judge of 1) the facts, 2) the credibility of the witnesses, and 3) the

weight to be given to the testimony of each witness. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App.1981). As factfinder, a jury may reject any or all part of a witness's testimony. *Id.*

In conducting a factual sufficiency review, an appellate court must review all of the evidence, but not in the light most favorable to the prosecution. *Johnson v. State*, 23 S.W.3d 1, 6–7 (Tex.Crim.App. 2000). We must determine whether a neutral review of all of the evidence, both for and against the challenged finding, demonstrates that a rational jury could have found guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim.App.2004). Evidence is factually insufficient when evidence supporting the verdict, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt. *Id.* Evidence is also factually insufficient when contrary evidence is so strong that the beyond-a-reasonable-doubt burden of proof could not have been met. *Id.* at 484–85. Our evaluation should not intrude upon the factfinder's role as the sole judge of the weight and credibility given to any witness's testimony. *Cain v. State*, 958 S.W.2d 404, 408 (Tex.Crim.App.1997).

### Attempted Indecency With a Child

 A person commits indecency with a child if, with a child younger than seventeen years and not the person's spouse, the person engages in sexual contact with the child or causes the child to engage in sexual contact. Tex. Pen.Code Ann. § 21.11(a)(1) (Vernon 2003). "Sexual contact" includes any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child. *Id.* § 21.11(c)(1). A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commis-

sion of the offense intended. *Id.* § 15.01(a). An attempt implies both an intent and an active effort to carry out and consummate the intent or purpose. *Flores v. State*, 902 S.W.2d 618, 620 (Tex.App.-Austin 1995, pet. ref'd). Thus, "attempt" is more comprehensive than "intent." *Id.* Circumstantial evidence may be used to prove an essential element of the offense charged. *See Wilson v. State*, 654 S.W.2d 465, 467 (Tex.Crim.App.1983).

 Appellant first contends that there is no evidence that J.L. was younger than seventeen on September 16, 2002, the date of the incident, or that J.L. was not Appellant's spouse. However, the record includes J.L.'s testimony that he was sixteen years old on September 16, 2002. J.L. also testified that he had first met Appellant on September 13, 2002. This statement supports an inference that J.L. was not Appellant's spouse. *See Meyers v. State*, 737 S.W.2d 6, 8 (Tex.App.-Corpus Christi 1987, no pet.).

 Appellant also contends that the record contains no evidence that he did any act amounting to more than mere preparation as required by section 15.01(a). The court of criminal appeals has recognized that there is an "imaginary line" that separates mere preparatory conduct, which is usually noncriminal, from an act that tends to effect the commission of an offense, which is always criminal conduct. *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). This necessarily creates a "gray area" within which the imaginary line is to be drawn. *McCravy v. State*, 642 S.W.2d 450, 460 (Tex.Crim.App. 1980). The legislature did not intend to draw this line at the last proximate act. *Id.* Therefore, the fact that an appellant could have taken further action without actually committing the offense does not render his actions nothing more than mere preparation. *Sorce v. State*, 736 S.W.2d

851, 857 (Tex.App.-Houston [14th Dist.] 1987, pet. ref'd). Where the imaginary line is to be drawn depends upon the nature of the crime attempted and must be considered on a case-by-case basis. *See Gibbons v. State*, 634 S.W.2d 700, 706–07 (Tex.Crim.App.1982).

The record reveals that Appellant was seventy-seven years old and in poor health on the date of the offense alleged. J.L. was a junior in high school. At trial, J.L. testified that on September 13, 2002, he was working at Food Rite in Seven Points and met Appellant for the first time. Appellant asked J.L. if he wanted to make some money by helping him with some work at his house, and J.L. responded, "I guess." Appellant then gave J.L. directions to his house, and J.L. wrote them down. J.L. then carried Appellant's groceries out for him, and Appellant asked him whether he was going to come over and do some work. J.L. replied that he "didn't know" and that he would try.

J.L. testified that the following day (September 14), which was a Saturday, Appellant was waiting in the parking lot for him when he arrived for work. J.L. parked his vehicle about one hundred yards from the front door of the store, where all Food Rite employees park. Appellant was parked two or three spaces to the right, although there were "plenty" of spaces closer to the door where Appellant could have parked. Appellant said J.L.'s name and called him over to his vehicle. Appellant asked J.L. why he did not show up that morning, and J.L. told him he had work to do around his own house. He also told him he had to get to work and went inside the store to clock in. Appellant came inside the store and made a purchase. J.L. carried Appellant's groceries out, and Appellant again asked J.L. if he would come to his house to do some work. J.L. told him "probably not" because he

had to work the rest of the weekend, and Appellant drove away.

Two days later (September 16), J.L. went to work and parked in the usual area. He went inside the store, clocked in, and noticed Appellant in the store about five to six minutes later. According to J.L., Appellant said hello and asked him if he was going to come over. J.L. told him that he would not be able to "make it." J.L. carried Appellant's groceries to his vehicle, which was parked at the south end of the store. J.L. had not seen Appellant's vehicle parked there before and stated that Appellant's vehicle was approximately two hundred yards from the front of the store. At the time, J.L. noticed about four or five open parking spaces at the front of the store.

When they reached Appellant's vehicle, Appellant instructed J.L. to put the groceries on the passenger's side. Appellant got in on the driver's side and, as J.L. opened the passenger door, Appellant asked him to get in the truck because he wanted to talk to him for a minute. J.L. informed Appellant that he had to get back to work. J.L. testified that Appellant then asked him if he wanted to make "a quick ten bucks." J.L. told him "he did not" and that he had to get back to work. Appellant then said, "Well, I can't get stimulation of my male area because of my diabetes so I want to know if I can jack you off for $10.00." J.L. immediately set Appellant's groceries on the ground, closed the vehicle door, said "no" in response to Appellant's question, and walked back inside the store.

The acts recounted above that preceded Appellant's request for J.L. to participate in a sexual act amounted to no more than "mere preparation." However, when Appellant offered J.L. ten dollars "if I can jack you off . . . .," he crossed the imaginary line between preparation and at-

tempt. Therefore, a rational factfinder could have found Appellant guilty beyond a reasonable doubt of attempted indecency with a child. We hold that the evidence was legally sufficient to support Appellant's conviction. Appellant's third issue, insofar as it pertains to attempted indecency with a child, is overruled.

According to the record, the defense offered no evidence to contradict any of the State's witnesses. For this reason, and in light of the State's evidence discussed above, we hold that the evidence supporting the verdict is factually sufficient to support Appellant's conviction for attempted indecency with a child. *See Pegues v. State*, No. 14–99–00378–CR, 2000 WL 1028968, at *3 (Tex.App.-Houston [14th Dist.] July 27, 2000, pet. ref'd) (not designated for publication) (since evidence was legally sufficient, evidence was also factually sufficient where defense offered no evidence to contradict the testimony of the State's witnesses) (citing *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996)). Appellant's fourth issue, insofar as it pertains to attempted indecency with a child, is overruled.

### Criminal Solicitation of a Minor

■ The indictment in the instant case alleges, in pertinent part, that Appellant "request[ed], command[ed], or attempt[ed] to induce [J.L.] to engage in specific conduct, to wit: to allow [Appellant] to touch the genitals of [J.L.] that under the circumstances surrounding the conduct of [Appellant], as [Appellant] *believed them to be,* would have constituted indecency with a child by sexual contact . . . ." (emphasis added). Appellant contends that the record contains no evidence that Appellant believed J.L. was younger than seventeen

years of age. *See* Tex. Pen.Code Ann. § 21.11(a)(1) (indecency with a child occurs where the "child" is younger than seventeen years). Therefore, he concludes, the evidence is both legally and factually insufficient to sustain his conviction for criminal solicitation of a minor.

■ A person commits an offense if, with intent that indecency with a child be committed, he requests, commands, or attempts to induce a minor to engage in specific conduct that, under the circumstances surrounding the actor's conduct as the actor believes them to be, would constitute the commission of indecency with a child. *See* Tex. Pen.Code Ann. § 15.031(a) (Vernon 2003).[4] To determine whether the actor intended to commit indecency with a child, we must look to the specific conduct the actor requested, including the circumstances surrounding the conduct as the actor believed them to be. *See id.; see also Hobbs v. State*, 548 S.W.2d 884, 887 (Tex.Crim.App.1977) (op. on reh'g) (construing Texas Penal Code section 15.03, pertaining to criminal solicitation).

The record reveals that J.L. met Appellant on September 13, 2002, and the alleged criminal solicitation occurred on September 16. However, the record does not show that Appellant asked J.L. his age or that J.L. told Appellant his age. Nor does the record contain a description of J.L.'s physical appearance, his demeanor, or any other characteristic from which an inference could be drawn that Appellant believed J.L. was younger than seventeen at the time of the offense.

J.L. testified that on September 14, he went to work after school and that Appellant was waiting on him in the parking lot.

4. Section 15.031(a) provides that the intended and solicited offense must be one of the offenses listed in Texas Code of Criminal Procedure, article 42.12 § 3g(a)(1). Indecency with a child is one of the listed offenses. *See* Tex.Code Crim. Proc. Ann. art. 42.12 § 3g(a)(1) (Vernon Supp.2004–2005).

Sue Yakesch, assistant manager at Food Rite, referred to the Food Rite employees as "boys" and "kids." She described J.L.'s job responsibilities as doing what needed to be done, including the duties of a "[s]ack boy." Dusty Wyman Bryant, a former Food Rite employee, testified that he had a conversation with Appellant on September 25, 2002 during which Appellant asked him if he was still in school. This testimony supports an inference that Appellant knew some of the Food Rite employees were in school. However, the evidence does not support an inference that all Food Rite employees were in high school or that Appellant believed J.L. was younger than seventeen.

In its brief, the State does not suggest that Appellant has overlooked any evidence in the record. Instead, it urges that "the judge and jury were in a much better position to view the victim and his appearance and in a much better position to determine whether the defendant was aware the victim was younger than seventeen (17) years of age by circumstantial evidence." We recognize that the jury, as trier of fact, is permitted to make reasonable inferences from the evidence. *See Garcia v. State,* 57 S.W.3d 436, 441 (Tex. Crim.App.2001). However, where an appellant challenges the legal sufficiency of the evidence to support an element of the crime for which he was convicted, we must view all of the evidence in the light most favorable to the verdict and then determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found this element of the crime beyond a reasonable doubt. *Guevara v. State,* 152 S.W.3d 45, 49 (Tex.Crim.App.2004). We may not engage in supposition to substitute for what has actually found its way into the appellate record. *Cockrum v. State,* 758 S.W.2d 577, 585 n. 7 (Tex.Crim.App.1988). There-

fore, we may not assume that because the jury found Appellant guilty, J.L.'s appearance at trial supported an inference that Appellant believed J.L. to be younger than seventeen years on the date of the offense charged.

In the instant case, after reviewing the record in the light most favorable to the verdict, we agree with Appellant that a rational trier of fact could not have found that Appellant believed J.L. to be younger than seventeen years. Consequently, we hold that the evidence is legally insufficient to support Appellant's conviction and sustain his third issue relating to criminal solicitation of a minor. Because the evidence is legally insufficient to support the conviction, we need not address the portion of Appellant's fourth issue pertaining to factual sufficiency.

### Double Jeopardy

In his fifth issue, Appellant asserts that he was twice punished for the same criminal act in violation of the double jeopardy provisions of the United States and Texas Constitutions.

In *Burke v. State,* 80 S.W.3d 82 (Tex. App.-Fort Worth 2002, no pet.), the appellant was convicted of reckless aggravated assault and intoxication assault. On appeal, he challenged both convictions on double jeopardy grounds and raised additional challenges to his aggravated assault conviction. The Fort Worth court reversed his aggravated assault conviction because his guilty plea was involuntary. *Id.* at 85–86. Moreover, the court concluded that, after the reversal, the appellant's double jeopardy issue was moot. In reaching its conclusion, the court agreed with the State's argument that "[t]he double jeopardy claim, if any, is not ripe until, or if and when, the State seeks to punish Appellant for an aggravated assault aris-

ing from the same transaction and victim." *Id.* at 86.

Here, we have held that Appellant's conviction for criminal solicitation of a minor was supported by legally insufficient evidence. Consequently, that conviction must be reversed. Therefore, Appellant can no longer contend that he is being punished twice for the same offense. His double jeopardy claim will not be ripe unless and until the State seeks to punish him for criminal solicitation of a minor arising from the same transaction and victim. *See id.* Therefore, we hold that Appellant's fifth issue is moot and do not address it.

## Conclusion

Having overruled Appellant's issues Appellant pertaining to his conviction for attempted indecency with a child, we *affirm* the trial court's judgment on this count of the indictment. Because we have held that Appellant's conviction for criminal solicitation of a minor is supported by legally insufficient evidence, we *reverse* the judgment of the trial court on this count of the indictment and *render* a judgment of acquittal.