**Affirmed and Memorandum Opinion filed April 3, 2012.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00248-CR

**RAYMOND ORTIZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 09-DCR-051101**

## MEMORANDUM OPINION

Appellant Raymond Ortiz appeals his conviction for attempted indecency with a child, challenging the sufficiency of the evidence to support his conviction, and claiming the trial court erred in admitting testimony that was not an exception to the hearsay prohibition under Texas Rule of Evidence 803(4), and by denying appellant's request that the State specify an "on or about" date in its election. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged in two separate indictments with separate cause numbers. Each indictment alleged the offense of indecency with a child by contact.[1] The indictment for cause number 51101, which serves as the basis of this appeal, alleged that on or about January 15, 2007, in Fort Bend County, appellant did:

> then and there intentionally and knowingly engage in sexual contact with [the complainant], a child younger than 17 years of age, and not the spouse of the Defendant, by contact between the hand of the Defendant and the genitals of [the complainant], with the intent to arouse and gratify the sexual desire of the Defendant.

The indictment included an enhancement paragraph, alleging a previous felony conviction. Appellant pleaded "not guilty" to the charged offenses. Both offenses were tried to a jury at the same time.

At the 2011 trial, the fourteen-year-old complainant testified that appellant began dating her mother when the complainant was five years old. In 2002, when the complainant was around six years old, appellant moved into the home the complainant shared with her mother and siblings. When the complainant was nine years old, she recalled that appellant started touching her inappropriately when the family lived in a home in the Teal Run neighborhood in Fort Bend County. She claimed that she sometimes slept in the same bed with her sister, appellant, and her mother. According to the complainant, on some occasions, she felt appellant touch her waist, thighs, and breasts while she was in bed, and this conduct continued for two or three years until she was eleven or twelve. The complainant described how, at other times during the two- or three-year period, appellant would pull her aside when no one else was looking and try to touch her arm, breasts, thighs, and her "lower area," a name by which she referred to her vagina.

---

[1] In cause number 51100, the jury found appellant was not guilty of the charged offense.

The complainant described a specific incident that occurred on October, 21, 2006, on her mother's birthday, in which the complainant went to sleep in her room. The complainant awoke to realize that appellant had taken her from her bed and walked her to the closet. The complainant was half asleep, but felt appellant touch her breasts, remove her pants, and place his lips on her vagina for a short time before she returned to bed and appellant rejoined the party downstairs. The complainant acknowledged that she revealed the detail about his lips touching her for the first time at trial. The complainant also indicated that her aunt may have known about the incident and saw appellant in the closet.

The complainant referred to another incident that occurred in a vehicle during her basketball season, which lasted from October 2006 to January 2007, when she was eleven years old. The complainant testified that appellant was driving to a grocery store after the complainant's basketball practice was cancelled; the complainant was sitting in the front passenger seat of the vehicle. According to the complainant, appellant first touched her leg; he then placed his hand under her basketball uniform, touched her genitals beneath her underwear, and left his hand there for a minute before they arrived at the store.

The complainant described another incident that she referred to as incident "two," in which she was watching television in a bed upstairs in her home. At that time, she, her mother, and appellant were on top of the covers. The complainant described how appellant reached for her hand and placed her hand inside his pants; she felt his penis, which she described as a "firm" "cylinder shape," and hair. Appellant moved the complainant's hand up and down. The complainant attempted to elbow her mother, but did not tell her mother about what had happened. The complainant could not identify a specific date this incident occurred, but stated that the weather was hot outside. The complainant stated that this incident occurred when she was eleven years old and attending Baines Middle School as a sixth grader.

3

In another incident that the complainant referred to as incident "four," she and appellant were sitting together on a loveseat under a blanket while watching television. The complainant's mother and younger sister were sitting together on a sofa in the same room. According to the complainant, appellant covered up with a second blanket and placed his hand through the leg of her basketball shorts, touching her on her thigh, arm, and vagina areas. Appellant then attempted to place his hand beneath her underwear, so that his hand was "lower" than her genitals. He eventually touched her vagina for five seconds. The complainant testified that she attempted to close her legs, but that appellant kept his hand in place for ten more seconds before she moved from the loveseat. The complainant could not recall a specific date for this incident, but testified that it was cold outside and that it may have been January.

The complainant described an incident, to which she referred as incident "five," that occurred in a San Antonio hotel room on a family trip in 2006. According to the complainant, the appellant twice laid next to her in bed and touched her waist before returning to his bed. The second time he touched her, he also guided her hand over the top of his pants in the area of his genitals.

In February 2007, the complainant's mother observed appellant fondling the complainant's behind as he hugged the child. Following this incident, the complainant told her mother that this incident was not the first time appellant had touched her inappropriately. The mother reported the incident to law enforcement authorities. As part of the investigation, the complainant was evaluated by a doctor who conducted a sexual assault examination. On the way to the exam, the complainant made outcry to her mother that appellant had put his hands down her panties and touched her vagina and that he placed her hand on his penis in another incident. The doctor concluded that the physical findings from the exam supported the complainant's claims of sexual abuse; the doctor recommended that the complainant participate in counseling.

4

Appellant was referred to the Child Advocacy Center, where she met with a therapist, Karen Ann Sullivan, and continued individual and group therapy until the trial setting, a period that spanned more than two years. Sullivan was called to testify at trial. The trial court overruled appellant's objections to Sullivan's qualifications as an expert and to her testimony as not being within an exception to the hearsay rule. Sullivan testified in the jury's presence about three incidents that she learned about during the course of providing therapy to the complainant: (1) the worst incident on October 21, 2006 in the closet in which appellant touched the complainant with his lips; (2) an incident in a vehicle following a basketball game in which appellant touched the complainant's knee; and (3) the final incident in February 2007, that the complainant's mother observed. Sullivan stated her belief that the complainant has not revealed every detail of these incidents in therapy. According to Sullivan, it is common for a child that has been sexually abused to forget details of incidents, such as the date of an incident, or confuse one incident with another.

Appellant gave three voluntary, non-custodial interviews with law enforcement officers that were recorded and played in open court. As reflected in two of the videos, appellant agreed that he originally did not recall the incidents. In both videos, appellant referred to an incident on a loveseat around January 2007. In the videos, appellant stated that he was watching television after work with his arm around the complainant. Appellant stated that the complainant grabbed his hand and moved it toward her vagina over her clothes, where he felt her "soft spot" or "bulge" for a second or so before he yanked his hand away.

Just before the State rested, the State elected in seeking a conviction to rely on incident "four," described by the complainant as occurring on the loveseat. Appellant objected and requested that the State's election include a date that includes "on or about" language. The trial court overruled appellant's objection and denied his request for the

5

additional language. The State entered into evidence its election, which provides, in relevant part:

> [T]he elected incident is the one described by [the complainant] when she alleges that she and the defendant were downstairs watching TV with her mother and sister. Her mother and sister were on the couch and she and the defendant were on the loveseat under blankets and the defendant placed his hand on [the complaint's] genitals.

The jury found appellant guilty of attempted indecency with a child. Appellant pleaded "true" to the enhancement paragraph and was sentenced to twenty years' confinement. Appellant now appeals.

### ISSUES AND ANALYSIS

**Is the evidence sufficient to support the conviction?**

In his first issue, appellant challenges the evidence as insufficient to support his conviction. In evaluating a sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits indecency with a child if, with a child younger than seventeen years and not the person's spouse, the person engages in sexual contact with the child or causes the child to engage in sexual contact. Tex. Penal Code Ann. § 21.11(a)(1) (West 2011). "Sexual contact" includes any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child, with intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(c)(1). A person commits an attempted indecency with a child if, with specific intent to commit the offense, the person commits an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended. *Id.* § 15.01(a) (West 2011). Circumstantial evidence may be used to prove an essential element of the offense charged. *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998) (inferring intent from circumstantial evidence of accused's acts, words, and conduct).

Appellant claims that the State's witnesses were biased, not credible, and that the strength of the evidence is tenuous at best. Appellant's argument centers on his characterization of the complainant's testimony as ambiguous, inconsistent, and confusing. Appellant complains chiefly that the complainant offered no date or time frame of the incidents. Appellant also asserts that the child's allegations that he touched her with his lips in the closet was a new allegation that she had never revealed before trial.

Contrary to appellant's argument that the complainant's testimony, alone, should be rendered insufficient to support his conviction, the testimony of a child complainant, as in this case, is sufficient to support a conviction for aggravated sexual assault or indecency with a child. Tex. Code Crim. Proc. Ann. art. 38.07; *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *Tear v. Sate*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd); *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.— Houston [14th Dist.] 2008, no pet.). The record reflects that the complainant recounted with detailed specificity multiple incidents in which appellant touched her

7

inappropriately. Sullivan testified that the child complainant had not revealed all details of the incidents during therapy, noting that children who have been sexually abused often have difficulty recalling details of abuse. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (providing that a child complainant cannot be expected to testify with the same clarity and ability as mature, capable adults); *Bargas*, 252 S.W.3d at 889 (providing that the jury could have considered a therapist's testimony offering why a child complainant had imperfect perception of the time or dates of incidents). The jury, as trier of fact, is the "sole judge of the credibility of the witnesses and the strength of the evidence," and the jury may choose to believe or disbelieve any portion of a witness's testimony. *See Fuentes*, 991 S.W.2d at 271; *Sharp*, 707 S.W.2d at 614. A reviewing court resolves any inconsistencies in favor of the jury's verdict. *See Bargas*, 252 S.W.3d at 889. Although the complainant gave a rough time-frame of the incidents, the complainant's detailed account is sufficient to support appellant's conviction even if unsupported by any other evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.07. The State is not required to present corroborating or physical evidence. Tex. Code Crim. Proc. Ann. art. 38.07; *Garcia*, 563 S.W.2d at 928; *Newby v. State*, 252 S.W.3d 431, 437 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd).

Appellant also asserts that the State offered no evidence of specific intent to commit an offense. In a case for indecency with a child, a trier of fact may infer the requisite intent to arouse or gratify the sexual desire from conduct, remarks, or all surrounding circumstances. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981). No oral expression of intent or visible evidence of sexual arousal is necessary to infer intent. *See Gregory v. State*, 56 S.W.3d 164, 171 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd). Given the complainant's testimony about appellant's conduct on the loveseat, in placing his hand underneath her clothing and underwear and touching her genitals, the evidence supports a finding of specific intent. *See McKenzie*, 617 S.W.2d at 216; *Gregory*, 56 S.W.3d at 171–72 (providing that child complainants' testimony of appellant's sexual activities, the fact that he warned the

8

children not to reveal the events, and an accused's own admission that he inadvertently touched a child's vagina when the child moved his hand down into her pants supported a inference that when the accused attempted sexual contact, the accused harbored a specific intent to arouse and gratify his sexual desires).

Appellant claims that the State proved he committed no other act than "mere preparation" and failed to effect the commission of the intended offense. We consider the particular facts of this case to determine whether appellant's conduct amounted to only "mere preparation" or whether his conduct tended to effect the commission of the offense. *See Henson v. State*, 173 S.W.3d 92, 102 (Tex. App.—Tyler 2005, pet. ref'd); *see also Flournoy v. State*, 668 S.W.2d 380, 383 (Tex. Crim. App. 1984) (referring to an "imaginary line" separating non-criminal mere preparatory conduct from criminal conduct that tends to effect the commission of an offense). The fact that an appellant could have taken further action without actually committing the offense does not render his actions nothing more than mere preparation. *Henson*, 173 S.W.3d at 101; *Sorce v. State*, 736 S.W.2d 851, 857 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd).

The record reflects the complainant's testimony that in incident "four," appellant was seated on a loveseat with her watching television. The complainant, who was younger than seventeen years at the time of the offense and not appellant's spouse, could not recall the specific date of this incident, but she testified that it was cold outside and could have been January. The complainant testified that she was wearing basketball shorts and that her basketball season lasted from October 2006 to January 2007. Although the complainant already was covered by a blanket on the loveseat, she described how appellant retrieved a second blanket to cover them. The complainant recounted how appellant then placed his hand through the leg of her basketball shorts and underneath her underwear, touching her vagina for five seconds. The video evidence reflects appellant's version of the events that appellant had his arm around the complainant and touched the complainant's "soft spot"; appellant claimed that the

9

complainant grabbed his hand and placed it on her genitals. Although covering up with a second blanket could be construed as non-criminal conduct of "mere preparation," the imaginary line separating conduct of an attempt from conduct tending to effect the offense was crossed when appellant placed his hand through the leg of the complainant's basketball shorts. *See Henson*, 173 S.W.3d at 102–03 (concluding imaginary line separating conduct of mere preparation from conduct that tends to effect the offense was crossed when after asking a minor grocery store employee to help take groceries to a vehicle, the accused offered the minor money to engage in sexual conduct).

Because a rational trier of fact could have found that the State proved each of the elements of attempted indecency with a child beyond a reasonable doubt, the evidence is sufficient to support appellant's conviction. *See Henson*, 173 S.W.3d at 103 (concluding evidence was sufficient to support conviction of attempted indecency with a child); *Gregory*, 56 S.W.3d at 171–72. We overrule appellant's first issue.

**Did the trial court reversibly err in admitting testimony from the therapist despite appellant's hearsay objection?**

In his second issue, appellant asserts the trial court reversibly erred in admitting the testimony of Sullivan, the therapist who conducted individual and group counseling with the complainant, beginning in 2008, about one year after the complainant's mother contacted authorities, and continuing intermittently for two years. Sullivan testified to three incidents that she learned about in the course of therapy with the complainant: (1) the October 2006 incident in the closet, (2) the incident in the vehicle following a basketball game, and (3) the incident in February 2007, that the complainant's mother observed. Appellant challenges Sullivan's qualifications as a medical professional and claims that the complainant's statements made in therapy with Sullivan were not made for the purpose of a medical diagnosis or treatment within the exception to the hearsay prohibition in Texas Rule of Evidence 803(4). In ruling Sullivan could testify as an expert, the trial court limited her testimony of any extraneous-offense evidence to the three specific incidents.

10

We review a trial court's ruling on whether a statement is admissible as an exception to the hearsay prohibition under Rule 803(4) under an abuse-of-discretion standard. *See Taylor v. State* 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). Under this standard, a reviewing court reverses a trial court's decision if the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people may disagree. *Id.*

Hearsay is not admissible unless otherwise permitted by statute or rule. *See* Tex. R. Evid. 802; *Taylor*, 268 S.W.3d at 578. The proponent of the hearsay evidence must establish that an exception applies that would make the evidence admissible in spite of its hearsay character. *Taylor*, 268 S.W.3d at 579. As relevant in this case, Rule 803(4) provides that the following statements are not excluded by the hearsay rule even though the declarant is available as a witness:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Tex. R. Evid. 803(4).

### Sullivan's Medical Qualifications

The exception provided by Rule 803(4) is not limited to statements to a medical professional, as long as the declarant believes the information conveyed ultimately will be utilized in diagnosis or treatment of a condition, so that the declarant's motive for truthfulness is trustworthy. *See Taylor*, 268 S.W.3d at 587–88 (involving statements made by a child complainant to a professional counselor, who was not a medical doctor, in the course of counseling sessions that occurred several months after the sexual abuse was alleged). A statement made for the purpose of facilitating a child-declarant's mental health carries the same self-interested motive as a statement made to facilitate the declarant's physical well-being. *Id.* at 588.

11

Law enforcement authorities investigating the alleged offenses referred the complainant to the Child Advocacy Center for therapy. The complainant testified about seeing Sullivan to talk to someone who could help her. Sullivan is a lead therapist at the Child Advocacy Center and holds an undergraduate degree in psychology and a master's degree in social work. She is a licensed clinical social worker and a registered play therapist who specializes in child abuse and trauma. Sullivan is not a medical doctor, nor is she supervised by one. As of the trial setting in 2011, Sullivan had been seeing the complainant in individual and group counseling for two years. The record reflects that the complainant had weekly appointments, but missed more appointments than she attended during the two-year span. Sullivan had developed a clinical working diagnosis of post-traumatic stress disorder to pursue the complainant's course of treatment. The complainant's out-of-court statements made to Sullivan relating to appellant's conduct as the perpetrator of the charged offense are not inadmissible under Rule 803(4) simply because Sullivan is not a psychiatrist or otherwise a member of the medical profession. *See Taylor*, 268 S.W.3d at 588.

### *Pertinent to Diagnosis or Medical Treatment*

But, for hearsay testimony to be admissible under Rule 803(4), the testimony also must satisfy a two-part test in which the proponent of the evidence must ensure the record reflects that: (1) the medical professional or trained mental-health professional explains the importance of knowing the true identity of the assailant to the efficacy of the diagnosis or treatment; and (2) the child complainant manifests an understanding of the need to be truthful. *Id.* at 582, 588–89. Appellant points to the fact that Sullivan had no formal diagnosis and that the complainant, although admitting that she was in therapy with Sullivan, did not testify that she suffered from post-traumatic stress disorder. According to appellant, the complainant's statements to Sullivan in the course of therapy over two years lacked guarantees of trustworthiness because she did not make those statements with the understanding that they would facilitate a medical diagnosis or

12

treatment. Even if we were to indulge appellant's argument and presume, without deciding, that the trial court erred in admitting Sullivan's testimony of the three incidents under Rule 803(4), we conclude there would be no harm from the admission of this testimony.

The record reflects that prior to Sullivan's testimony of the three incidents, the child complainant already had testified about those same three incidents, in addition to multiple other incidents. Any error in the admission of evidence is harmless and does not constitute reversible error when substantially similar evidence is introduced at trial through other witnesses. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (concluding that any error in admitting hearsay evidence was harmless in light of other properly admitted evidence proving the same fact); *Bargas*, 252 S.W.3d at 897. Consequently, we cannot conclude from the record as a whole that the error, if any, influenced the jury. We overrule appellant's second issue.

**Did the trial court err in denying appellant's request for the State to elect a specific "on or about" date?**

In appellant's third issue, he asserts the trial court reversibly erred in failing to order the State to elect a specific "on or about" date. Generally, when an indictment alleges one act of sexual misconduct, but evidence of more than one incident was presented at trial, the State must elect the act upon which it will rely for conviction. *See O'Neal v. State*, 746 S.W.2d 769, 772 (Tex. Crim. App. 1988). An election is "some action that excludes or limits the jury's consideration of an offense." *Ex parte Goodbread*, 967 S.W.2d 859, 861 n.2 (Tex. Crim. App. 1998). The trial court has discretion to require the State to make an election at any time before the State rests its case in chief. *O'Neal*, 746 S.W.2d at 772. Once the State has rested its case in chief, however, on timely request by the accused, the trial court must order the State to make its election. *Phillips v. State*, 193 S.W.3d 904, 912 (Tex. Crim. App. 2006). Following the State's election, an accused is entitled to an instruction charging the jury to consider only the elected act in deciding guilt and limiting the jury's consideration of all other

13

unelected acts to the purposes for which they were admitted. *See Duffey v. State*, 326 S.W.3d 627, 630 (Tex. App.—Dallas 2009, no pet.); *Rivera v. State*, 233 S.W.3d 403, 406 (Tex. App.—Waco 2007, pet. ref'd); *see also Goodbread*, 967 S.W.2d at 861 n.2 (providing that election excludes or limits jury's consideration of offense by instructing to disregard or limiting purpose for which evidence is offered).

As reflected in the record, outside of the jury's presence, just after the State rested, the State gave notice that it elected the incident "four" to rely upon in seeking a conviction. Appellant objected to the election, asserting that without an "on or about" date in the election, he did not have adequate notice or opportunity to defend. Appellant also claimed that the lack of a specific "on or about" date in the election violated his rights to due process and due course of law and lessened the State's burden of proof. The trial court overruled the objection and allowed the State to reopen for the limited purpose of reading the elections into evidence, admitting documents into evidence, and requesting judicial notice of the dates of the filings of the indictments. In the jury's presence, the State reopened, requested the trial court take judicial notice of the indictment in case at hand was filed on February 2, 2009, and then entered two exhibits into evidence before resting. The two exhibits were the State's elections in the respective cases; as pertinent to this appeal, the State elected an incident described by the complainant when she alleged "that she and the defendant were downstairs watching TV with her mother and sister. Her mother and sister were on the couch and she and the defendant were on the loveseat under blankets and the defendant placed his hand on [the complainant's] genitals."

As reflected in the record, the trial court charged the jury, in relevant part, as follows:

> Now bearing in mind the foregoing instructions, if you find and believe from the evidence beyond a reasonable doubt, that the Defendant RAYMOND ORTIZ, on or about the 15th day of January, 2007, in the County of Fort Bend and the State of Texas, did with specific intent to commit the offense of Indecency With a Child, commit and act amounting to more than mere preparation that tended but failed to effect the

14

commission of the offense intended, which was to engage in "Sexual Contact" with [the complainant], a child younger than 17 years of age and not then the spouse of RAYMOND ORTIZ, by attempting to cause contact between the hand of RAYMOND ORTIZ, and the genitals of [the complainant], with intent to arouse or gratify the sexual desire of RAYMOND ORTIZ, then you will find the Defendant guilty of the offense of Attempted Indecency With a Child.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant of the offense of Attempted Indecency with a Child and say by your verdict "Not Guilty."

You are instructed that if there is any testimony before you in this case regarding the Defendant having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other offenses, if any were committed, and even then you may only consider the same for the following purposes:

1)  to determine motion, intent, scheme, or design, if any, of the Defendant,

2)  to determine the state of mind of the Defendant and child, and,

3)  for its bearing on the previous and subsequent relationship between the Defendant and the child.

You are instructed to consider only the act elected by the State in deciding the guilt or innocence of the defendant in this indictment. Testimony concerning any other offenses alleged to have been committed by the defendant, if any, may not be considered by you for any purpose whatsoever, unless those other offenses, if any, meet all the requirements set out above.

Appellant claims for the first time on appeal that the jury was not instructed specifically to limit its consideration of guilt or innocence to any date elected by the State and that the jury was not properly instructed which offense date was to be considered in deciding his guilt or innocence and which offenses were merely extraneous. We construe these arguments to allege jury-charge error. We presume, without deciding, that the trial court committed this charge error. Because appellant failed to object to the jury charge, we review the alleged jury-charge error for egregious harm. *See Bluitt v. State*, 137

15

S.W.3d 51, 53 (Tex. Crim. App. 2004) (requiring a showing of egregious harm to warrant reversal on unobjected-to jury charge error); *Isenhower v. State*, 261 S.W.3d 168, 175 (Tex. App.—Houston [14th Dist.] 2008, no pet.). An error resulting from egregious harm is one that affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). We consider the degree of harm in light of the following: (1) the entire jury charge, (2) the state of the evidence, including contested issues and the weight of the probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the record as a whole. *Ngo v. State*, 175 S.W.3d 738, 750 n.48 (Tex. Crim. App. 2005); *Isenhower*, 261 S.W.3d at 176.

The trial court instructed the jury to consider only testimony of extraneous acts for three limited purposes. The trial court, likewise, instructed the jury to consider only the elected act in determining guilt or innocence unless testimony of extraneous acts met those same three requirements. *See Isenhower*, 261 S.W.3d at 176.

In the presentation of closing argument, the State remained focused on the elected offense, and appellant acknowledges as much in his appellate brief. Appellant's trial counsel referred to extraneous-offense evidence as a "distraction" to the jury, intended to "inflame," or "to compound the damage," in referring to the testimony from the doctor and Sullivan.

In considering the evidence, the complainant was the one source of all of the allegations of sexual misconduct against appellant. She offered details about many of those specific incidents, including the elected offense, which appellant claimed occurred because the complainant grabbed his hand. Sullivan's testimony in general corroborated some of those same acts to which the complainant testified.

Both in a written document admitted into evidence and in open court before the jury, the State unambiguously elected incident "four," which occurred on the loveseat under a second blanket. For the foregoing reasons, we conclude that even if the charge

contained error as alleged by appellant, this error would not result in egregious harm to appellant. *See O'Neal*, 746 S.W.2d at 772–73 (concluding harmless error occurred because State's evidence clearly indicated on which act the State sought to convict the defendant); *Isenhower*, 261 S.W.3d at 177 (finding harmless error from trial court's error in failing to give a more specific instruction on the elected offense).

According to appellant, although the State made an election, the lack of a specific "on or about" date in the election failed to provide him with adequate notice and opportunity to defend, lessened the State's burden, and deprived him of due process and due course of law. Appellant claims that an "on or about" date would have limited the jury's consideration to the elected offense in deciding his guilt. We construe these arguments as asserting non-jury-charge error. We presume, without deciding, that the trial court committed this non-charge error, and we conduct a constitutional harm analysis as to this alleged error. *See Phillips*, 193 S.W.3d at 910.

In this analysis, we consider any harm in light of the four purposes of the election requirement: (1) appellant's need to be protected from the admission of extraneous-offense evidence; (2) to minimize the risk that the jury might choose to convict, not because one or more crimes were proved beyond a reasonable doubt, but because all of them together convinced the jury that the accused was guilty; (3) to ensure unanimous verdicts, that is, all of the jurors agreeing that one specific incident, which constituted the offense charged in the indictment occurred; and (4) to give the defendant notice of the particular offense upon which the State intends to rely for prosecution and afford the accused an opportunity to defend. *See id*. at 910, 913–14; *Dixon v. State*, 201 S.W.3d 731, 733–36 (Tex. Crim. App. 2006).

The first purpose weighs against harm because appellant was not entitled to protection from the admission of evidence of extraneous sexual offenses committed by him against the child. *See* Tex. Code Crim. Proc. Ann. art. 38.37 (West 2005); *Dixon*, 201 S.W.3d at 734. Article 38.37 permits the admission of evidence of other crimes,

wrongs, or acts committed by the accused against the child for purposes showing the state of mind of the accused and the previous and subsequent relationship between the accused and the child complainant. *See* Tex. Code Crim. Proc. Ann. art. 38.37.

As for the second purpose, in light of the State's unambiguous election of incident "four" both in a written document admitted into evidence and in open court before the jury, there was little risk that the jury chose to convict, not because the offense was proved beyond a reasonable doubt, but because the evidence of the offense and of the extraneous offenses together convinced the jury that appellant was guilty.

Regarding the risk of a nonunanimous verdict, the trial court charged the jury to consider only the act elected by the State in deciding the guilt or innocence, and the State's closing argument focused on the elected incident "four." The trial court instructed the jury to reach a unanimous verdict. *See Dixon*, 201 S.W.3d at 735. The State unambiguously elected incident "four" both in a written document admitted into evidence and in open court before the jury. There is no question that the jury was properly focused on the elected act. *See Duffey*, 326 S.W.3d at 634.

Finally, regarding notice and an opportunity to defend, the record reflects that the State timely gave notice of its election outside of the jury's presence after it rested and appellant moved for a directed verdict. Appellant sought to clarify that the State intended to elect incident "four" and appeared to understand which incident the State intended to elect. Given the timely notice and appellant's understanding of which incident was elected, we could hardly conclude that appellant's defense was prejudiced or adversely affected. *See id.*

Presuming that the trial court committed the alleged non-charge error, the record establishes beyond a reasonable doubt that the alleged non-charge error did not contribute to appellant's conviction.

Concluding appellant has suffered no harm from any error associated with the State's election, we overrule appellant's third issue.

18

The trial court's judgment is affirmed.


/s/     Kem Thompson Frost
            Justice


Panel consists of Justices Frost, Brown, and Christopher.

Do Not Publish — Tex. R. App. P. 47.2(b).