**Opinion filed August 8, 2019**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-17-00225-CR, 11-17-00226-CR, 11-17-00227-CR, & 11-17-00228-CR

_____

**JOEL DEREK ROJO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause Nos. 14814, 14813, 14690, & 14689**

## MEMORANDUM OPINION

Appellant, Joel Derek Rojo, appeals his convictions and sentences after a jury trial on four consolidated causes. Appellant was separately indicted for committing offenses against three different individuals. Specifically, he was charged with indecency with a child by contact, indecency with a child by exposure, sexual performance by a child, and attempted indecency with a child by exposure. The jury found Appellant guilty in all four causes. The trial court assessed

Appellant's punishment at confinement as follows: twenty years for indecency with a child by contact; ten years for indecency with a child by exposure; twenty years for sexual performance by a child; and two years for attempted indecency with a child by exposure. The trial court sentenced him accordingly.

Appellant presents three issues on appeal. In his first issue, Appellant contends that the trial court erred when it required voir dire before conducting a hearing on Appellant's motion to change venue. In his second issue, Appellant asserts that the trial court erred when it permitted the joinder of the four causes against him. In his third issue, Appellant challenges the legal sufficiency of the evidence to support his conviction for attempted indecency with a child by exposure. We affirm.

### *The Charged Offenses*

The three child-victims in these cases are S.R.B., D.R.E.B., and C.A.K. The grand jury indicted Appellant with (1) indecency with a child by contact (against S.R.B.), (2) indecency with a child by exposure (against D.R.E.B.), (3) sexual performance of a child (against D.R.E.B.), and (4) attempted indecency with a child by exposure (against C.A.K.).

### *Procedural History*

The charges against Appellant received substantial media attention in Howard County. As a result, Appellant filed a motion to change venue. At a pretrial hearing, the trial court announced that it had reviewed the motion and that it was the trial court's intention to carry the motion until the conclusion of voir dire. The trial court ruled that voir dire should occur to gauge the perceptions of the jurors regarding the case. The trial court stated that it would hold a hearing on the motion immediately following voir dire. Appellant made no objection to the trial court postponing the hearing on the venue motion until after voir dire. Once the jury was selected, however, Appellant withdrew his motion to change venue. As a result, the trial court

2

did not hold a formal hearing on the motion and did not rule on the motion. Rather, the trial court considered the motion withdrawn.

Before trial, the trial court consolidated the four causes for purposes of trial. Appellant opposed the consolidation and moved to sever each cause into a separate trial. However, the trial court denied the motion for severance and proceeded to trial on all four causes before the same jury.

*Evidence at Trial*

In April 2015, S.R.B.'s grandmother called the police to report that S.R.B. had been sexually assaulted. S.R.B. was fourteen years old at the time. Appellant, a detective with the Big Spring Police Department (BSPD), was assigned to investigate the case. During his investigation, Appellant interviewed S.R.B. five times. S.R.B. testified that, on two of those occasions, Appellant took S.R.B. to a secluded drive-in theater. During the second trip to the drive-in theater, Appellant informed S.R.B. that he found naked pictures on S.R.B.'s assailant's computer and needed proof that it was in fact S.R.B. in those pictures. While inside his vehicle, Appellant instructed S.R.B. to lift up her top and pull down her pants and underwear to her ankles. S.R.B. complied. Appellant then proceeded to take photographs of S.R.B. While doing so, Appellant started rubbing her vagina. After he stopped, Appellant stated that he thought it was indeed S.R.B. in those pictures. Appellant then took S.R.B. home.

In the summer of 2015, the police investigated D.R.E.B. for criminal trespass. Appellant was assigned the case and interviewed D.R.E.B. three separate times at the police station. During the first interview, Appellant told D.R.E.B. that he needed to see her birthmarks in case she ran from the cops. Appellant then took pictures of her birthmark. Appellant asked D.R.E.B. whether she had birthmarks on her breasts. Although D.R.E.B. stated that she did not, Appellant still made D.R.E.B. take off her shirt and bra and took photographs of D.R.E.B. During the second interview,

Appellant told D.R.E.B. that the pictures he had previously taken would not properly upload to the computer and that he needed to retake them. Appellant again had D.R.E.B. remove her shirt and bra and took more photographs. After Appellant's third encounter with D.R.E.B., Appellant drove her home. D.R.E.B. testified that, on the way home, Appellant stopped under an overpass in the highway and informed D.R.E.B. that he noticed more birthmarks and needed to take more photographs of her. Appellant then made D.R.E.B. pull her pants and underwear down. Because Appellant did not see any birthmarks, D.R.E.B. assumed no pictures were taken. Appellant, however, had his camera out and was looking at D.R.E.B. for a few minutes while her pants and underwear were pulled down. Afterwards, Appellant took D.R.E.B. home.

Later that summer, C.A.K.'s father filed a report with the police against C.A.K.'s boyfriend because of the age difference between the two. Appellant was assigned to the case and investigated the report in August 2015. During his investigation, Appellant interviewed C.A.K. two times. After Appellant's initial interview with C.A.K., Appellant interviewed her boyfriend. After interviewing C.A.K.'s boyfriend, Appellant picked up C.A.K. from her home for another interview. Instead of going back to the police station, however, Appellant drove C.A.K. in his unmarked police car to an abandoned and secluded drive-in theater. During this encounter, Appellant informed C.A.K. that he had acquired some pictures of an unidentified female. While inside the vehicle, Appellant asked C.A.K. whether she shaved her private parts and whether she had any birthmarks; C.A.K. answered yes and no, respectively. Appellant stated that he did not find any birthmarks in the pictures either. Appellant also asked C.A.K. the following question: "Could you help prove that these pictures aren't yours . . . [b]y showing me your boobs and your private part?" C.A.K. responded by saying: "No." C.A.K. felt scared and shocked during this encounter. Appellant then drove C.A.K. back to

her house; they never went to the police station on the second trip. Appellant did not log the mileage of the trip to the drive-in theater and did not record the in-car conversation with C.A.K., which violated BSPD protocol.

After a joint trial on the merits, the jury found Appellant guilty in all four causes. This appeal followed.

*Analysis*

In Appellant's first issue, he contends that the trial court erred when it required voir dire before conducting a hearing on Appellant's motion to change venue. According to Appellant, the trial court's actions denied Appellant his rights to due process and his right to an impartial jury. We disagree.

To prevail on a motion to change venue, a defendant must demonstrate that publicity about the case is pervasive, prejudicial, and inflammatory. *Gonzalez v. State*, 222 S.W.3d 446, 449 (Tex. Crim. App. 2007). In examining whether the pretrial publicity is prejudicial and inflammatory, a trial court may take three matters into consideration: (1) the nature of the publicity, (2) any evidence presented at a change of venue hearing, and (3) testimony received from veniremembers at voir dire. *Id.* at 451. Thus, a trial court is permitted to defer its decision on a motion to change venue until after voir dire. *See id.*

Here, the trial court carried the motion forward until after voir dire and intended to hold a hearing on the motion immediately afterward. Appellant cites to no authority, and we have found none, that stands for the proposition that a trial court must first hold a hearing on a motion to change venue before conducting voir dire. Because a trial court may withhold its judgment on a motion to change venue until after voir dire, we cannot conclude that the trial court in this case erred when it required voir dire before holding a hearing on Appellant's motion to change venue. *See id.*

To the extent that Appellant argues that the trial court erred because it ultimately proceeded to trial without changing venue, we conclude that Appellant waived this argument for appeal. A party may expressly waive venue rights by clear, overt acts evidencing an intent to waive, or impliedly, by taking some action inconsistent with an intent to pursue the venue motion. *Carlile v. RLS Legal Sols., Inc.*, 138 S.W.3d 403, 408 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Here, after voir dire, Appellant directed his trial counsel to withdraw his motion to transfer venue. Appellant did not ask for a hearing on the motion; consequently, the trial court did not hold such a hearing. Instead, the trial court considered the motion withdrawn. Thus, Appellant's act of withdrawing his motion to transfer venue amounted to waiver of his venue motion. We overrule Appellant's first issue.

In Appellant's second issue, he contends that the trial court erred when it consolidated his four indictments into one case. According to Appellant, the consolidation was improper because the four offenses against the three victims were not related crimes, occurred at different times, and were not a part of a common scheme or plan. We disagree.

Consolidation of prosecutions is a matter that rests within the sound discretion of the trial court. *Johnson v. State*, 509 S.W.2d 322, 323 (Tex. Crim. App. 1974). We review a trial court's decision to consolidate or sever a cause of action for an abuse of discretion. *See Salazar v. State*, 127 S.W.3d 355, 365 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

Cases against a defendant may be consolidated for trial when the charged offenses arise out of the same criminal episode. TEX. PENAL CODE ANN. § 3.02(a) (West 2011) (stating that "[a] defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode"). A "criminal episode" is defined as the commission of two or more offenses, regardless of whether

6

the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances: (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan or (2) the offenses are the repeated commission of the same or similar offenses. *Id.* § 3.01. It is unnecessary that the offenses that make up a criminal episode occur on a single date, at a single place, or against a single complainant. *Diaz v. State*, 125 S.W.3d 739, 742 (Tex. App.— Houston [1st Dist.] 2003, pet. ref'd). Rather, a criminal episode may comprise offenses against different complainants and may even take place over a period of years. *Id.*

Here, the evidence shows that the charged offenses arose out of the same criminal episode because they constitute a common scheme or plan and because the offenses are the repeated commission of the same or similar offenses. Specifically, Appellant faced four charges based on related allegations of sexual misconduct. The offenses involved Appellant isolating himself with a minor, taking the minor to a secluded location, and performing or attempting to perform sexual acts on the minor under the guise of conducting a police investigation.

Therefore, we conclude that Appellant's charged offenses were based on connected incidents that constituted a single criminal episode. *See* PENAL § 3.01(1). Even though the offenses occurred over a period of several months and involved different victims, we conclude that the trial court was within its discretion to find that the offenses arose out of the same criminal episode. *See Diaz*, 125 S.W.3d at 742.

To the extent that Appellant argues that the trial court erred when it failed to grant his severance request, we conclude that Appellant failed to show that he was unfairly prejudiced by the consolidation.

Although the State can consolidate multiple offenses from a single criminal episode into one trial under Section 3.02, a defendant generally has the right to sever the multiple offenses that the State consolidated into one trial setting. PENAL § 3.04. Section 3.04(a) states: "Whenever two or more offenses have been consolidated or joined for trial under Section 3.02, the defendant shall have a right to a severance of the offenses." *Id.* § 3.04(a). However, the defendant's right is not absolute.

A defendant's right to severance is limited by Section 3.04(c) of the Texas Penal Code. *See id.* § 3.04(c). Section 3.04(c) states that the right to severance does not apply to a prosecution for offenses described by Section 3.03(b) "unless the court determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses, in which event the judge may order the offenses to be tried separately or may order other relief as justice requires." *Id.* § 3.04(c). Because Appellant's charged offenses constitute those offenses listed under Section 3.03(b), Appellant was required to show unfair prejudice to be entitled to severance. *See Lane v. State*, 174 S.W.3d 376, 380 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

Appellant argues that the consolidation unfairly prejudiced him because it confused the issues to the jury and misled the jury. Appellant, however, failed to explain how exactly the consolidation confused or misled the jury. Based on our review of the record, we cannot conclude that Appellant was unfairly prejudiced by the consolidation.

Additionally, we note that, for trials involving certain sexual offenses, including those in this case, Section 2 of Article 38.37 of the Texas Code of Criminal Procedure permits the admission of evidence of offenses committed against children who are not the alleged victim in the trial. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2 (West 2018); *see also Hodge v. State*, 500 S.W.3d 612, 623 (Tex. App.—Austin 2016, no pet.). Specifically, Section 2 provides that, notwithstanding Rules 404 and 405 of the Texas Rules of Evidence, "evidence that the defendant has

8

committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." CRIM. PROC. art. 38.37, § 2(b). Therefore, even if the trial court had granted Appellant's motion to sever, it is likely that all of the evidence admitted in Appellant's joint trial would still have been introduced into evidence in each of Appellant's separate trials. *See Hodge*, 500 S.W.3d at 624. As a result, we cannot conclude that the trial court abused its discretion when it refused to grant Appellant's request for severance. Accordingly, we overrule Appellant's second issue.

In Appellant's third issue, he contends that the evidence was legally insufficient to support his conviction for attempted indecency with a child by exposure. According to Appellant, the evidence is insufficient to support his conviction because (1) Appellant testified that he denied asking C.A.K. to disrobe, (2) there was no testimony that he used a camera to take a picture, (3) there was no evidence that he was watching when he allegedly asked C.A.K. to expose her breasts and genitals, (4) his questioning of C.A.K. was only for an "investigatory purpose," (5) there was no evidence of any actual exposure, and (6) Appellant's actions were no more than mere preparatory conduct. We disagree.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When we conduct a sufficiency review, we consider all the

9

evidence admitted at trial, as well as improperly admitted pieces of evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Additionally, we defer to the factfinder's role as the sole judge of the witnesses' credibility and of the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

A person commits the offense of indecency with a child by exposure if the person, with intent to arouse or gratify his sexual desire, causes the child to expose the child's anus or any part of the child's genitals. *See* PENAL § 21.11(a)(2)(B) (West 2019). A person is guilty of criminal attempt if, "with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* § 15.01(a). A defendant's request of a child to allow the defendant to commit a sexual act on the child constitutes an act amounting to more than mere preparation, as required for conviction for attempted indecency with a child. *See Henson v. State*, 173 S.W.3d 92, 102–03 (Tex. App.—Tyler 2005, pet. ref'd) (holding evidence legally sufficient to support conviction for attempted indecency with a child where the defendant asked the child whether the defendant could touch the child's male sexual organ in exchange for money).

Here, the act that the State alleged Appellant committed, which amounted to more than mere preparation for committing the challenged offense, was "tak[ing] C.A.K., a child younger than 17 years of age, to an isolated area and request[ing]

10

C.A.K. [to] expose her genitals to the defendant." At trial, the evidence showed that Appellant took C.A.K. to a secluded location in his unmarked police vehicle. During this particular encounter, Appellant disregarded BSPD protocol. Specifically, Appellant did not log his mileage to or from the abandoned drive-in theater. Nor did Appellant activate any recording devices inside his vehicle or on his person either before, during, or after the incident. While inside the vehicle, Appellant asked C.A.K. whether she shaved her vagina; C.A.K. answered: "Yes." Appellant then asked whether he could see C.A.K.'s breasts and genitals, to which C.A.K. answered: "No." Appellant then drove C.A.K. back to her home.

Although Appellant testified that he did not ask C.A.K. to disrobe, the jury is the ultimate judge of the credibility of the witnesses and could have disbelieved Appellant. *See Brooks*, 323 S.W.3d at 899. Additionally, Appellant's argument that there was no evidence that he had a camera to take any pictures appears to be in response to the State's original indictment of the challenged offense, wherein the State charged Appellant with "attempting to photograph the genitals of C.A.K." However, we note that the State amended its indictment to exclude any reference to attempting to take photographs and, instead, charged Appellant with asking C.A.K. to expose her genitals. Thus, the State was not required to present any evidence that Appellant had a camera and was attempting to take photographs.

Moreover, Appellant's acts and omissions—of taking C.A.K. to a secluded area, not reporting or recording the encounter, and asking C.A.K. to show him her breasts and genitals—do not indicate that their interaction was strictly for an "investigatory purpose." Further, although there is no evidence that Appellant was watching when he made the request and there was no actual exposure of C.A.K.'s breasts and genitals, the evidence shows that Appellant's acts and words were a positive and direct attempt to effectuate his sexual desires. When we consider the evidence admitted at trial in the light most favorable to the verdict, we conclude that

11

a rational jury could have found Appellant guilty beyond a reasonable doubt of attempted indecency with a child by exposure. Therefore, we conclude that the evidence was legally sufficient to find Appellant guilty of the challenged offense. We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgments of the trial court.


KEITH STRETCHER

JUSTICE


August 8, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1] Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.