

# NUMBER 13-25-00369-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**GERALD LEE MANZANALEZ JR.,**                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                              **Appellee.**

---

## ON APPEAL FROM THE 24TH DISTRICT COURT
## OF JACKSON COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and West
Memorandum Opinion by Chief Justice Tijerina**

Appellant Gerald Lee Manzanalez Jr. was convicted of third-degree felony offenses of attempted sexual assault of a child and attempted indecency with a child. *See* TEX. PENAL CODE §§ 15.01, 21.11(a)(1), 22.01(a)(2). He was sentenced to concurrent ten-

year terms of incarceration.[1] By what we construe as two issues, appellant contends that the evidence is insufficient to support the convictions. We affirm.

## I. THE EVIDENCE

M.M. testified that when she was around thirteen or fourteen years old, she was asleep in her bedroom; at around two or three o'clock in the morning, she was awakened by what she described as "movement" and saw appellant, who is her uncle, in her bedroom "pacing . . . back and forth." M.M. explained that she pretended to be asleep then appellant stopped pacing, and she felt "pressure" when he sat on the edge of her twin bed. M.M. said that she was wearing a shirt and underwear. M.M. stated that "[h]e reached his hand out, and he started to feel on [her] bed, and he started to feel for [her] legs." She said, "[Appellant touched] [m]y legs, my thigh . . . I was laying sideways, so he could only reach one of my thighs. . . . It was like a caressing motion. . . . It was like just slow and just . . . back and forth . . . . [A]bove the knee." M.M. demonstrated how appellant touched her upper and lower thigh, and she colored the section of her body that he touched on a diagram of the human body. M.M. stated that appellant's hand was "[a] few inches" from her genitals. M.M. said,

> He tried to crawl on top of me.
>
> . . . .
>
> He tried to physically crawl onto my bed. He was on all fours. I remember that because I remember feeling the pressure of his knee whenever he put it, and he was crawling . . . like an ape, but like he was using his hands to balance himself over me.
>
> . . . .

---

[1] To protect the victim's identity in this case, we will use an alias. *See* TEX. R. APP. P. 9.8 cmt., 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

He wasn't too far up yet before I put my foot against his chest, and I kicked him.

. . . .

He was far enough, like maybe to my knee because I remember coiling my leg back and then just pushing it forward against his chest, so . . . he wasn't that far close to me yet because I was still able to get my leg up.

According to M.M., appellant had one arm on either side of her legs and over the lower part of her body. M.M. explained that she put her foot "at the base of his chest," and she indicated where she did so. M.M. "just pushed him off," in a manner not to hurt him, but she "just put force there to get him off, to push him off the bed." The prosecutor asked, "What was going through your mind?" M.M. replied, "That I needed to get him off of me. If not, he was going to do something." The prosecutor said, "When you say he was going to . . . do something. What do you mean?" M.M. stated, "He was going to rape me."

M.M. said that appellant "left through a back door," which she then locked, and she "held" herself against the door. She said, "He stuck his hand in" through the "sliding flap of" an air conditioning window unit vent, "and he started to try and unbolt the door again so he could get back inside." According to M.M., she "grabbed his hand" and "shoved" it back through the vent. She said, "I am telling him to leave and go home and go to sleep." According to M.M., appellant continued to attempt to break back into her room by sticking his hands in the flap of the air conditioning vent, which she fought off by pushing his hands. M.M. said, "It was a constant battle to try to keep that flap closed."

M.M. testified that appellant started to push his phone in the flap and told her that it needed to be charged so he could watch pornography, and he said, "I asked to see your tits, but that would be weird because you're my niece.'" M.M. said that appellant also tried

3

to "shove his wallet through the crack as well." M.M. wept as she explained that she kept telling appellant to leave, and "[h]e just kept trying to get back inside." M.M. stated that she smelled his breath, which "smelled really bad" of alcohol. M.M. noticed the bathroom light "flicker on," which she assumed was her mother. M.M. said she told appellant, "[I]f you don't leave I am going to start screaming and then someone is going to come." M.M. stated, "[h]e started whispering to me, 'No, don't do that, don't do that. Don't scream. Don't yell. Don't scream.'" M.M. screamed for her mother, who eventually came to her room. M.M. did not know where appellant went when she screamed. M.M. said that she was crying, and she told her mother "that he had tried breaking in . . . . She asked me if he had touched me, and I said, Yeah, he grabbed my leg."

M.M. testified that there had been two other incidents when appellant touched her inappropriately. On one occasion, M.M. had a sleepover with appellant's daughter, when M.M. was five or six years old, and appellant asked M.M. if she wanted to lie down with him. M.M. said, "I laid down, and he also laid down, and . . . he kind of spooned me. That was the position, and he reached his hand over, and he started doing that caressing motion with my thigh. . . . I just remember being really uncomfortable. . . . I remember lifting his hand up, and I kept trying to move it off. . . . I tried to sleep through it." M.M. recalled that on another occasion, appellant crawled into bed with her, spooned her, and caressed her. M.M. said that she tried to stop appellant from caressing her, but he continued.

M.M.'s mother testified that M.M. told her that appellant broke into her room, refused to leave, and tried to climb into bed with her. Forensic Interviewer, Myra Garcia, testified that M.M. demonstrated how appellant touched her upper thigh, and Garcia then

4

demonstrated for the jury the manner that M.M. claimed that appellant touched her.

Appellant testified that he did not attempt to commit the charged offenses. Appellant said, "I don't see kids like that . . . I mean, it is just my niece. That's my sister's daughter, and, you know, she's real close with my daughter." Appellant's defense counsel asked about the sleepover incident, and appellant replied, "No, sir, not that I—not that I know of." Appellant's trial counsel asked, "What do you mean 'not that I know of.'" Appellant replied, "I don't really got nothing to do with anything like that, no part of that."

## II. SUFFICIENCY OF THE EVIDENCE

By his first and second issues, appellant contends the evidence is insufficient to support "appellant's specific intent to commit the acts listed in the greater offenses of sexual assault of a child and indecency with a child." Appellant further argues that "[t]he record shows that when [he] entered M.M.'s bedroom, he only desired to see her breasts."

## A. Standard of Review and Applicable Law

In a sufficiency review, we consider all the evidence in the light most favorable to the verdict and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). Sufficient evidence exists if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899.

5

The sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

> The hypothetically correct jury charge in this case would provide that a person commits the offense of attempted sexual assault of a child if, with the specific intent to commit the offense of sexual assault of a child, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the intended offense. A person commits sexual assault of a child if, regardless of whether the person knows the age of the child at the time of the offense, the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means or causes the sexual organ of a child to contact or penetrate the mouth of another person, including the actor.

*Crawford v. State*, 562 S.W.3d 106, 111 (Tex. App.—Corpus Christi–Edinburg 2018, pet. ref'd) (citation modified).

> A person commits indecency with a child if, with a child younger than seventeen years and not the person's spouse, the person engages in sexual contact with the child or causes the child to engage in sexual contact. "Sexual contact" includes any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child. A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended. An attempt implies both an intent and an active effort to carry out and consummate the intent or purpose. Thus, "attempt" is more comprehensive than "intent." *Id.* Circumstantial evidence may be used to prove an essential element of the offense charged.

*Henson v. State*, 173 S.W.3d 92, 101 (Tex. App.—Tyler 2005, pet. ref'd) (citation modified).

## B. Discussion

Here, M.M. stated that appellant caressed her thigh inches from her genitals while crawling on her bed and forcing his body over hers. M.M. fought back because she believed that appellant meant to rape her. M.M. testified that she had to kick appellant

from her bed, that he fled, but then attempted to break back into her room while asking to see her "tits" and watch pornography. There is evidence that appellant had previously touched M.M. inappropriately on more than one occasion.

Viewing the evidence in the light most favorable to the verdict, the trier of fact could have reasonably found from the evidence and reasonable inferences therefrom that appellant had the intent required to commit the underlying offenses of sexual assault of a child and attempted indecency with a child but was unable to complete the acts because M.M. fought him. *See Whatley*, 445 S.W.3d at 166; *Brooks*, 323 S.W.3d at 898–99; *see also In re J.B.M.*, 157 S.W.3d 823, 826 (Tex. App.—Fort Worth 2005, no pet.) (finding evidence sufficient that the appellant committed attempted sexual assault because he isolated the victim "in his apartment under the guise of retrieving a cigarette after [the victim] earlier denied his physical advances"; he "kept pulling her to him, kissing and touching her, pulled her to the ground, restrained her, reached under her shirt, and caused her legs to spread," and the victim "testified that she thought [the appellant] was trying to have sex with her"); *Dixon v. State*, No. 01-04-01100-CR, 2005 WL 2620541, at *3 (Tex. App.—Houston [1st Dist.] Oct. 13, 2005, no pet.) (mem. op., not designated for publication) (explaining that intent may be inferred from circumstantial evidence and determining that the evidence supported the finding of intent to commit sexual assault because the appellant attacked the victim, threatened to hurt her, grabbed her breasts). Accordingly, we conclude that any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *See Whatley*, 445 S.W.3d at 166; *Brooks*, 323 S.W.3d at 898–99. We overrule appellant's first and second issues.[2]

---

[2] By what he purports to be a separate issue, appellant contends that the evidence is insufficient

7

### III.  CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
30th day of April, 2026.

---

to prove that his conduct was more than mere preparation because the State failed to prove that he had the requisite intent to commit the greater offenses of sexual assault of a child and/or indecency with a child. Appellant states:

> To cross this "imaginary line", Appellant argues the evidence must show Appellant acted with the intent to accomplish the greater offenses of sexual assault of a child and/or indecency with a child, but fell short of the actual commission of these crimes. Penal Code §15.01(a). The record shows that when Appellant entered M.M.'s bedroom, he only desired to see her breasts. . . . But the acts alleged by M.M. [were] Appellant rubbing her leg and getting on the bed above her were not attempts to effectuate this. M.M. never described any acts to negate any notion Appellant had the intent to commit any acts covered by the greater offenses of Count 1 (causes the penetration of the anus or sexual organ of a child) and Count 2 (touching of the anus, breast, or any part of the genitals of a child). Appellant to touch her body or expose her breasts. . . . This would also negate any notion Appellant had the intent to commit any acts covered by the greater offenses of Count 1 (causes the penetration of the anus or sexual organ of a child) and Count 2 (touching of the anus, breast, or any part of the genitals of a child).

We have already concluded that the evidence is sufficient to prove that he had the intent to commit the greater offenses. Therefore, we need not address this issue. *See* TEX. R. APP. P. 47.1.

In one sentence appellant states, "Even if the jury believed that Appellant did have the intent to realize some form of 'sexual contact' with M.M., Appellant contends that the record only contains evidence of a 'mere preparation' to commit an actual offense." Appellant does not provide legal argument to support his bare assertion. Thus, we conclude that this issue is inadequately briefed. *See id.* R. 38.1(i).

8